John NASH, et al., Plaintiffs-Appellees,

v.

Delbert CHANDLER, et al., Defendants,

The City of Tyler, Texas, and Willie Hardy, Chief of Police, Etc., and The State of Texas, Defendants-Appellants.

Nos. 86–2327, 87–2485.

United States Court of Appeals, Fifth Circuit.

June 30, 1988.

---

**132.** *See American Federation of Labor v. Swing,* 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941).

**133.** 615 F.Supp. at 955–56.

**134.** *Thomas v. Collins,* 323 U.S. 516, 534, 65 S.Ct. 315, 324, 89 L.Ed. 430, 442 (1945); *Orr v. Thorpe,* 427 F.2d 1129, 1131 (5th Cir.1970).

**568**

Andy Tindel, Charles H. Clark, Tyler, Tex., for defendants-appellants.

Thomas H. Wilson, W. Carl Jordan, Houston, Tex., for amicus curiae Ass'n. Gen. Contractors of Am. Texas Chapter.

Larry R. Daves, Daves, McCabe & Crews, Tyler, Tex., Edward B. Cloutman, III, Dallas, Tex., for Nash.

George E. Barrett, Nashville, Tenn., for United Rubber Cork.

Charles H. Clark, Tyler, Tex., for City of Tyler and Hardy.

Mary F. Keller, Exec. Asst. Atty. Gen., Javier P. Guajardo, Asst. Atty. Gen., Austin, Tex., for State.

Before BROWN, RUBIN, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

██ The constitutional challenge raised by the union in this case is essentially the same as the challenge raised by the Texas Farm Workers Union in *Gault v. Texas Citrus and Vegetable Assn.*, 848 F.2d 544 (5th Cir.1988). For reasons more fully discussed in that opinion, article 5154d § 1, so far as it extends to mass picketing as defined in article 5154d § 1(1) is unconstitutionally overbroad and cannot stand. Article 5154d § 2 is readily subject to a narrowing construction by the Texas state courts and thus is not substantially overbroad.

## I. Procedural Background

This constitutional litigation arose out of a labor dispute in Tyler, Texas, and concerns the constitutionality of the Texas Mass Picketing Statute.[1] The plaintiff, John Nash, was President of United Rubber Workers Local 746 (Local 746). He filed suit against defendants Delbert Chandler and Buddy Schoellkopf Products, Inc. (the company) as a result of his arrest in connection with a labor strike against the company. Nash subsequently amended his complaint to add as party plaintiffs United Rubber, Cork, Linoleum and Plastic Workers of America (the union), Local 746 and three attorneys.

The amended complaint alleged that a conspiracy existed between the company, the City of Tyler, Texas, and Willie Hardy, Chief of Police of the City of Tyler, Texas, to deprive the plaintiffs of their constitutionally protected rights to engage in peaceful picketing, pursuant to the First and Fourteenth Amendments to the Constitution of the United States. The plaintiffs additionally complained that the defendants violated their federally protected rights under §§ 7 and 13 of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* The plaintiffs further alleged that the conspiracy violated 42 U.S.C. §§ 1983 and 1985, the Civil Rights Statutes.

Approximately two weeks after Nash filed suit in federal court, Schoellkopf filed an action in Texas state court, seeking an injunction against certain practices of the union and sympathizers with respect to the picketing of Schoellkopf's plant. A temporary restraining order was immediately issued by the state court. The union then

---

1. The challenged portions of Tex.Rev.Civ.Stat. art. 5154d (Vernon 1987) read as follows:
 1. It shall be unlawful for any person, singly or in concert with others, to engage in picketing or any form of picketing activity that shall constitute mass picketing as herein defined. "Mass picketing," as that term is used herein, shall mean any form of picketing in which:
 1. There are more than two (2) pickets at any time within either fifty (50) feet of any entrance to the premises being picketed, or within fifty (50) feet of any other picket or pickets.
 2. Pickets constitute or form any character of obstacle to the free ingress to and egress

 from any entrance to any premises being picketed or to any other premises, either by obstructing said free ingress or egress by their persons or by the placing of vehicles or other physical obstructions.
 2. It shall be unlawful for any persons, singly or in concert with others, by use of insulting, threatening or obscene language, to interfere with, hinder, obstruct, or intimidate, or seek to interfere with, hinder, obstruct, or intimidate, another in the exercise of his lawful right to work, or to enter upon the performance of any lawful vocation, or from freely entering or leaving any premises.

removed the state action to the United States District Court, and the case was assigned to the judge hearing Nash's complaint. The two cases were consolidated on March 27, 1979.[2]

## II. Facts

In September 1978, the NLRB certified the union as the collective bargaining representative for employees at Buddy Schoellkopf Products, Inc. in Tyler, Texas. After the union was certified, company representatives and agents contacted Willie Hardy, then Assistant Chief of Police, in Tyler, Texas, expressing concern that the union's presence would cause some disruption at the plant. From September 1978, until February 8, 1979, the union bargained with the company without any disruption of work. On February 8, 1979, the union engaged in a protected concerted activity, i.e., a strike, against the company, and picket lines were established at the entrance to the Tyler plant. Most of the members of the union at the Tyler plant are female and picketing was primarily conducted by striking women employees.

Prior to the labor dispute, Schoellkopf employed the services of Sentry Security Company to guard the plant. The service provided three armed guards, each of whom was issued one or more firearms, including pistols, shotguns and rifles. After the picket line was set up, the security personnel occasionally displayed the weapons they carried in the direction of the pickets. One of the guards frequently taunted picketers with threats of violence and made crude, explicit, and unwelcome sexual overtures to some female pickets. In apparent response to the tactics employed by the security guards, a large number of union members from the Kelly-Springfield Tire Company Plant in Tyler, mostly male, joined in the picketing at the Schoellkopf plant on March 12, 1979.

Members of the union engaged in picketing activities from February 8, 1979, until March 14, 1979. In several instances, non-striking employees were delayed for short periods in entering and leaving the company's plant when pickets temporarily blocked the access roads to the plant. On these occasions, the strikers and non-strikers exchanged taunts, jeers, obscenities and threats. In addition, picketers broke off several radio antennas on automobiles occupied by non-strikers, and a small number of the automobiles were beaten with picket signs and the hands of strikers. Aside from these incidents, no actual violence or threats of violence occurred.

Between February 8 and March 14, five arrests were made by the police force of the City of Tyler. None of these arrests was for violations of the Texas Mass Picketing Statute. On one occasion, the President of Local 746, John Nash, apparently provoked by his perception that plant guards were making unnecessary and threatening displays of their weapons, appeared on the picket line with a shot gun. He was promptly arrested.

On March 14, 1979, the company filed suit in state court seeking a temporary restraining order, temporary injunction and permanent injunction against the union's picketing activities. The temporary restraining order was granted *ex parte*, restraining picketing and other alleged activities of the union and Local 746, in accordance with the provisions of the Mass Picketing Statute.

Following the TRO, John Nash and a representative of the Tyler Police Department together marked off a distance of fifty feet from each entrance to the company's plant. Thereafter, all picketers, strikers and their sympathizers were required by the police to stay behind the fifty-foot markers. Up until this time, the Tyler Police Department had sent officers to the site of the picketing only in response to specific complaints by the company. However, on March 15, 1979, a meeting was held between various representatives of the company, the Tyler City Manager, Assistant City Manager, Chief of Police and Di-

---

**2.** This case and the companion case of *Gault v. Texas Citrus and Vegetable Assn.,* 848 F.2d 544 (5th Cir.1988) were argued together.

rector of the Chamber of Commerce. According to the company, the purpose of this meeting was to ensure that the City of Tyler and its Chief of Police would enforce the Mass Picketing Statute.

After the meeting, the Tyler Police Department stationed four to six vehicles at the entrance to the plant and from six to twelve members of the Police Department posted themselves in the vicinity of the picket line. Pickets, other striking employees, and their sympathizers were thereafter arrested for perceived violations of the Mass Picketing Statute. From March 15th on, only two pickets were permitted to be within fifty feet of the entrance to the plant, and any person who ventured closer was promptly arrested.[3] This included even persons relieving one of the two pickets allowed to be on duty. Any picket who crossed the access roads to the company's plant was arrested if he caused a vehicle to stop, even momentarily, by passing in front of it. The police alleged that this conduct by the pickets obstructed free ingress to and egress from the plant premises.[4] Any striker or sympathizer who yelled "scab" at a non-striking employee of the company was arrested. Police officers also arrested others accused of uttering profanities for their interference with non-striking employees in the exercise of their lawful right to work.[5]

From March 15, 1979 to March 28, 1979, approximately ninety arrests were made for unlawful picketing. The arrests concerned: (i) having more than two persons within fifty feet of the picketing sites; (ii) picketers crossing the driveway to the plant between automobiles entering or leaving the plant premises; (iii) picketers or union sympathizers in the immediate vicinity of the picket area (but over fifty feet away) calling non-striking employees "scabs." No arrests were made for any alleged acts or threats of violence, destruction of property or resisting arrest. The picketers sought a temporary restraining order preventing these arrests. In denying such relief, the state court admonished the

defendants to be certain their arrest activities conformed with constitutional procedures.

On two occasions, union attorneys identified themselves to police at the plant entrance as attorneys and counsel for the picketing union members. Upon approaching the picket line, the attorneys were arrested, handcuffed, taken to jail, booked and released hours later on bail. When picketers were arrested, the police confiscated the picketers' placards or signs as evidence. On several occasions, this confiscation totally depleted the union's supply of signs.

On April 4, 1979, after an evidentiary hearing, the Federal District Court issued a preliminary injunction. The court found that the City of Tyler, Texas and Willie Hardy, Chief of Police of Tyler, Texas, violated plaintiffs' constitutional rights as guaranteed by the First, Sixth and Fourteenth Amendments and their rights under § 7 of the National Labor Relations Act, in violation of 42 U.S.C. § 1983. The District Court found that the conduct of Tyler police officers constituted a pervasive pattern of harassment that continued and threatened to continue. The Chief of Police testified that he had ratified and condoned his subordinate officers' conduct at the site of the picketing.

The court additionally held that Article 5154d of Texas Revised Civil Statutes had been and was continually being enforced in an unconstitutional and illegal manner by the City of Tyler, its Police Department and its Chief. The court enjoined the city officials and police from arresting those union members who shouted "scab" at non-strikers, those who slowed traffic on the plant access roads only momentarily, and those who approached the picket line to relieve other picketers. The injunction also prohibited the arrest of attorneys who approached the picketers to consult with them. Finally, city officials were required to control traffic at the plant so as to

---

**3.** Tex.Rev.Civ.Stat. art. 5154d, Sec. 1(1).

**4.** Tex.Rev.Civ.Stat. art. 5154d, Sec. 1(2).

**5.** Tex.Rev.Civ.Stat. art. 5154d, Sec. 2.

ensure the safety of the picketers. The preliminary injunction was appealed to the Fifth Circuit, but the appeal was dismissed on May 30, 1979 because the strike had ended and the union had been decertified as the collective bargaining agent for the employees.

Pursuant to 28 U.S.C. § 2403(b), the Attorney General of Texas was notified that the constitutionality of Article 5154d had been challenged and leave was granted to the State of Texas to intervene.

At the final pretrial conference, all damage claims were dropped, Schoellkopf and Chandler were dismissed from the suit and the case proceeded solely on the question of whether the union was entitled to declaratory relief as to the facial constitutionality of article 5154d §§ 1(1) and 2. The plaintiffs ultimately obtained their requested declaratory relief, that Section 1(1) and Section 2 of Article 5154d unconstitutionally infringed on their first amendment rights.[6] In a memorandum opinion entered on February 21, 1986, the District Court found that these provisions of the mass picketing statute were constitutionally infirm due to overbreadth and vagueness.[7] Plaintiffs were awarded attorney's fees [8] as prevailing parties under 42 U.S.C. § 1988 against all defendants, including the State of Texas, jointly and severally.

### III. Did They Prevail?

■ Prevailing plaintiffs in civil rights actions should ordinarily recover attorney's fees unless special circumstances would render such an award unjust. 42 U.S.C. § 1988. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40, 48 (1984). The plaintiffs here, having

succeeded in obtaining the primary relief requested, that article 5154d §§ 1(1) and 2 unconstitutionally infringed on their first amendment rights, were properly considered "prevailing parties" for an award of attorney's fees.[9] The defendants do not challenge this determination, but rather base their appeal on the ground that fees were improperly awarded for work performed on non-prevailing claims.

■ The ultimate award of attorney's fees is reviewed for abuse of discretion, *Brantley v. Surles*, 804 F.2d 321, 327 (5th Cir.1986); *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717 (5th Cir.1974). There was no abuse of discretion in the amount awarded here. Accordingly, we affirm as to the amount of the fee awarded.

The District Court properly calculated the fee award based on the twelve factors enunciated in *Johnson*. Specific findings with relation to those twelve factors are findings of fact to be reviewed under the clearly erroneous standard. *Cobb, supra* at 1231, *Brantley, supra* at 327. Defendants challenge the lower court's finding on the eighth *Johnson* factor, arguing that, even if it can be said that plaintiffs prevailed overall, they are not entitled to an award for work performed on claims unrelated to the central issue.

■ The District Court held that the hours logged in pursuing the claims for monetary relief and a permanent injunction were "highly relevant to their successful challenge to the statute." Mem op. April 7, 1987. Based on our review of the record, we cannot say that this finding was clearly erroneous. The unsuccessful claims were not so distinct from the suc-

6. Article 5154d, Section 1(2) was initially challenged as well. The plaintiffs dismissed this challenge following *Sherman v. State*, 626 S.W. 2d 520 (Tex.Crim.App.1981), which narrowed the reach of that section.

7. *Nash v. State of Texas*, 632 F.Supp. 951 (E.D. Tex.1986).

8. The issue of attorney's fees was severed prior to final judgment being rendered on the declaratory relief. Attorney's fees were awarded following the rendering of the judgment that the statutes were unconstitutional. The attorney's

fee judgment was appealed as case 87–2485, which we now consider with the appeal from the declaratory relief judgment.

9. In this circuit, the test for prevailing party status is whether "the plaintiff prevailed on the central issue by acquiring the primary relief sought." *Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir.1987); *Falcon v. General Telephone Co.*, 815 F.2d 317, 322, 323 (5th Cir.1987); *Commonwealth Oil Refining Co. v. EEOC*, 720 F.2d 1383, 1385 (5th Cir.1983); *Iranian Students Assn. v. Edwards*, 604 F.2d 352, 353 (5th Cir.1979).

cessful claims so as to be severed for purposes of awarding attorney's fees. This presents a situation similar to that discussed in *Hensley:*

> [T]he plaintiff's claims for relief ... involve[d] a common core of facts ... Much of counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the District Court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed. 2d at 51. This is precisely what the District Court did. There was no abuse of discretion.

### IV. Is Texas Liable for Attorney's Fees?

The lower court determined that plaintiffs were "prevailing parties" and entitled to an award of reasonable attorney's fees under 42 U.S.C. § 1988. The plaintiffs were awarded judgment against the defendants,[10] jointly and severally, in the sum of $167,607.00 as reasonable attorney's fees, as well as $14,884.29 for expenses reasonably incurred. The State of Texas appeals the determination of joint and several liability for fees and costs.

The State of Texas, appearing in this action as an intervenor pursuant to 28 U.S.C. § 2403(b), is not subject to liability on the merits and consequently cannot be held jointly and severally liable for attorney's fees. Accordingly, we reverse as to the State of Texas and remand for a determination of the appropriate percentage of the attorney's fee award to be assessed against the State of Texas in accordance with the amount of time which was expended by the plaintiffs as a result of the State's intervention.

Whether an award of attorney's fees is proper against a state is a question of law over which this court has plenary review.

It can no longer be argued that the Eleventh Amendment is a complete bar to an award of attorney's fees against the state when those fees are awarded against state officers acting in their official capacities, *Hutto v. Finney*, 437 U.S. 678, 692, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522, 535 (1978), or when the state is a proper party defendant, *Kentucky v. Graham*, 473 U.S. 159, 170, 105 S.Ct. 3099, 3108, 87 L.Ed.2d 114, 125 (1985).

Texas is a proper party to this litigation, having intervened pursuant to 28 U.S.C. § 2403. Section 2403 provides that a state which intervenes under its provisions "shall ... be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." In addressing the assessment of fees against the State of Texas, we are writing on a clean slate. The law concerning apportionment of fees is unsettled and no one theory of division has been universally accepted. *See generally* 2 M. Derfner & A. Wolf, *Court Awarded Attorney Fees* § 17.03[2] (1984). While joint and several liability may be the simplest solution, it is not always the most equitable. It was not the most equitable choice in this instance.

Other circuits have developed sophisticated approaches to this problem, including apportionment by degree of liability, *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir.1982); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1117 (9th Cir. 1979) and apportionment according to the relative time spent litigating against a particular defendant, *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125 (9th Cir.1981). The First Circuit has fairly recently required district courts to weigh these competing theories in order to insure the most equitable division. *Grendel's Den v. Larkin*, 749 F.2d 945, 960 (1st Cir. 1984). While we do not go so far as to require such an analysis in each and every case, there will be instances in which it is necessary. This is such a case.

---

**10.** Delbert Chandler, Buddy Schoellkopf Products, Inc., City of Tyler, Texas and the State of Texas.

This is not an official capacity action. The action here was not brought against state officials acting in their official capacities. No state officials were involved in the constitutional tort alleged by the plaintiffs. The State of Texas is involved in this lawsuit because of federal law mandating notification of the state attorney general whenever the constitutionality of a state law is called into question. Consequently, the state is present solely as an intervenor under § 2403(b). Under *Tennessee v. Garner,* 471 U.S. 1, 22, 105 S.Ct. 1694, 1707, 85 L.Ed.2d 1, 16 (1985), Texas cannot be held liable on the merits and it was an abuse of discretion to render judgment holding Texas jointly and severally liable. *See also Graham,* 473 U.S. at 171, 105 S.Ct. at 3108, 87 L.Ed.2d at 125.

The District Court has misapprehended our ruling in *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980). The plaintiffs in *Familias* brought suit not against the state *qua* state, but against state officials acting in their official capacity. The award of attorney's fees against the state was permissible there because state officials were sued as state actors.

This is quite different from the situation presented here, where the state *qua* state becomes an intervenor pursuant to § 2403(b) solely for the purpose of defending the constitutionality of a state statute. There was no "action" by state officials which deprived the plaintiffs of rights guaranteed under the Constitution and laws of the United States. The action with respect to the State of Texas consisted solely of defending the constitutionality of state statutes. This is not sufficient to subject the state to liability on the merits. *Graham,* 473 U.S. at 171, 105 S.Ct. at 3108, 87 L.Ed.2d at 125. It would be inequitable to require the State of Texas to contribute in equal proportion with those parties who not only committed the alleged constitutional tort, but who were the principal defendants in the ensuing litigation. We must remand for consideration by the district court of an appropriate division of the fees, based upon the extent to which the presence of the State of Texas in this case increased the costs of litigation. The court

should strive to achieve the most equitable solution in determining a final division.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**