HARVEY INDUSTRIES, INC., and
Harvey Manufacturing, Inc.,
Plaintiffs,

v.

The INTERNATIONAL UNION OF
ELECTRONIC, ELECTRICAL, SALA-
RIED MACHINE AND FURNITURE
WORKERS, AFL–CIO; LOCAL 376
FW, et al., Defendants.

Civ. A. No. TY–89–86–CA.

United States District Court,
E.D. Texas,
Tyler Division.

March 2, 1989.

Willis D. Moore, Athens, Tex., William C. Strock, Dallas, Tex., for plaintiffs.

Marvin Menaker, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

This civil action originated from a work stoppage initiated by defendants, The International Union of Electronic, Electrical, Salaried Machine and Furniture Workers, against Harvey Industries. According to the complaint, defendants organized a strike and began picketing on or about February 3, 1989. The complaint further alleges that, in the process of picketing, defendants engaged in activity that is unprotected by the Labor Management Relations Act (LMRA), 29 U.S.C. § 151 *et seq*, and that is also unlawful pursuant to Texas Penal Code § 30.05 (criminal trespass) and Tex.Rev.Civ.Stat.Ann. art. 5154d § 2 (mass picketing statute).[1] The lawsuit was originally filed in the District Court of Henderson County, 173rd Judicial District of Texas, from which, on February 3, 1989, plaintiffs sought and received a temporary restraining order. In essence, the temporary restraining order prohibited defendants from engaging in violent, coercive, or intimidating picketing tactics, from obstructing or interfering with free ingress to

---

**1.** In two recent cases, the Fifth Circuit has examined the constitutionality of the Texas mass picketing statute, and found portions of the statute to be constitutionally deficient. *See Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 848 F.2d 544 (5th Cir.1988) and *Nash v. Chandler,* 848 F.2d 567 (5th Cir.1988). In each instance, however, the court upheld the constitutionality of Tex.Rev.Civ.Stat.Ann. art. 5154d § 2 as that provision has been interpreted by the Texas Supreme Court. *See Howard Gault Co.,* 848 F.2d at 561–62; *Nash,* 848 F.2d at 569.

and egress from plaintiffs' manufacturing plant, and from damaging or destroying plaintiffs' property. Defendants were also prohibited from picketing in the roadway or otherwise occupying the roadway in such a way as to interfere with vehicles as they attempted to enter or leave the plant. Finally, defendants were prohibited from "[i]nterfering with, hindering or intimidating in any way plaintiffs' officers, employees, agents, suppliers, customers, and other persons seeking to enter, leave, or service any of plaintiffs' facilities or having business with the plaintiffs." *See* Temporary Restraining Order at 2 (February 3, 1989).

On February 8, 1989, defendants filed a petition for removal, claiming that plaintiffs' original petition states claims arising under the Labor Management Relations Act, 29 U.S.C. §§ 157, 158 and 187 and further, that the issues necessarily implicate defendants' rights under the first amendment to the United States Constitution. Plaintiffs subsequently filed a motion to remand, which was set for hearing on February 10, 1989. After considering the oral arguments of each party, this court entered an order granting in part and denying in part plaintiffs' motion to remand. This opinion will explicate the reasoning and analysis upon which the February 10, 1989, order was based.

Removal of a civil action from state to federal court is governed by 28 U.S.C. § 1441. 28 U.S.C. § 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The federal question component of the removal statute, 28 U.S.C. § 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right *arising under* the constitution, treaties or laws of the United States shall be

removable without regard to the citizenship or residence of the parties." (Emphasis added.)[2]

A fundamental premise underlying "arising under" jurisdiction is embodied in the "well-pleaded complaint" rule. That doctrine provides that:

> [w]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); *see also Gully v. First National Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Consistent with the well-pleaded complaint rule, therefore, a defendant "may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Board v. Construction Laborer's Vacation Trust*, 463 U.S. 1, 11, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983) (emphasis in original). A necessary result of the well-pleaded complaint rule is that a defendant may not remove a case on the basis of a federal statutory or constitutional defense, including the defense of preemption, even if the defense is anticipated in the complaint and both parties admit that the only question for decision is raised by the federal defense. *Franchise Tax Board*, 463 U.S. at 10–13, 103 S.Ct. at 2846–48. Thus, to the extent that defendants' petition for removal is premised on their contentions that the state court's application of the mass picketing and criminal trespass statutes impermissibly infringes on their rights under the first amendment to the United States Constitution, removal

---

**2.** None of the parties has claimed that this action is removable pursuant to the court's diversity jurisdiction. Therefore, this opinion will be confined to the issue of whether the action was providently removed pursuant to 28 U.S.C. § 1441(b).

would appear to have been improvident and remand would be in order.

■■■ However, the absence of a federal question on the face of a complaint filed in state court does not necessarily preclude its valid removal pursuant to the district court's federal question jurisdiction. As noted previously, it is well established that federal pre-emption is ordinarily a federal defense and does not authorize removal to federal court, and the Supreme Court has often repeated that "a party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Nonetheless, an independent corollary of the well-pleaded complaint rule establishes that a plaintiff may not defeat removal by fraudulent means or by "artfully" omitting to plead essential federal issues in the complaint. *See Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853. In other words, Congress may intend that a federal statute so completely pre-empt a particular area, that any civil complaint that falls within the ambit of the federal statute necessarily "arises under" federal law, notwithstanding the fact that state law would provide a cause of action in the absence of the federal regulation. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). Thus, where a plaintiff has attempted to disguise an essentially federal claim by pleading solely under state law, removal is proper despite the absence of a federal issue on the face of the complaint.

■■ The Supreme Court has determined that the Labor Management Relations Act totally pre-empts some, but not all, state claims involving disputes between organized labor and management. For instance, the Court has held that the preemptive force of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, is so powerful as to displace entirely any state law claims for violation of contracts between an employer and a labor organization. *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). Therefore, a civil breach of contract action between a labor organization and an employer, filed in state court and raising, on its face, only state law claims, can be removed to federal court. *Id.; cf. Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (holding that a breach of contract suit between an employer and replacement workers was not pre-empted by the LMRA, because state adjudication of such suits does not interfere with the asserted policy of federal law favoring settlement of labor disputes). Since deciding *Avco*, the Court has often been asked to determine whether other state claims or regulations may co-exist with the comprehensive amalgam of substantive law and regulatory arrangements that Congress set up in the LMRA to govern labor-management relations affecting interstate commerce. *E.g., Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Farmer v. Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

■■ Previous Supreme Court decisions have enunciated two doctrines for determining whether a state regulation or claim is pre-empted by the LMRA. Under the first, a court is to determine whether the conduct that the State seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the LMRA.[3] *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, at 245, 79 S.Ct. 773, at 779, 3 L.Ed.2d 775 (1959); *see also Belknap*, 463 U.S. at 499, 103 S.Ct. at 3177. Although the "*Garmon* guidelines [are not to be applied] in a literal, mechanical fashion," *Sears*, 436 U.S. at 188, 98 S.Ct. at 1753, if the conduct at issue is arguably prohibited or protected, otherwise applicable state law and procedures are ordinarily pre-empted. *Farmer*, 430 U.S. at 296, 97 S.Ct. at 1061. When, however, the conduct

3. The second pre-emption doctrine proscribes state regulations of conduct that Congress intended to remain unregulated. *See Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). This doctrine is not implicated by the issues raised in plaintiffs' motion to remand.

at issue is only a peripheral concern of the LMRA or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act, the Court will refuse to invalidate applicable state regulations or claims. *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79. The question of whether state regulation should be allowed because of the deeply rooted nature of the local interest involves a sensitive balancing of any harm that might occur to the regulatory scheme established by Congress as a result of the regulation, either in terms of negating the Board's exclusive jurisdiction or in terms of conflicting substantive rules, and the importance of the asserted cause of action to the state. *See Sears,* 436 U.S. at 188–89, 98 S.Ct. at 1752–53.

At least two of the state law claims raised in the original petition fall within the class of state claims which the Supreme Court has already determined are not pre-empted by the LMRA. Specifically, the Court has held that state jurisdiction to enforce its laws prohibiting violence, defamation, the intentional infliction of emotional distress, obstruction of access to property, and trespass is not necessarily pre-empted by the LMRA. *See Sears,* 436 U.S. at 204, 98 S.Ct. at 1761 and cases cited at nn. 35–38. In situations where the conduct at issue in the state litigation is said to be arguably prohibited by the LMRA and hence within the exclusive jurisdiction of the NLRB, the relevant inquiry for determining whether a particular state claim is pre-empted is whether the conduct is of peripheral concern to the regulation of organized labor and is of intensely local concern. These determinations are often rephrased into an inquiry of whether the issues raised in state court are identical to those that would be brought before the NLRB. In *Sears,* for instance, the state trespass action concerned only the location of the picketing, while any issue that was an arguably unfair labor practice would have focused on the object of the picketing. Both trespassing and violent picketing are arguably prohibited by the LMRA. 29 U.S.C. §§ 157, 158 and 185. The trespass and violence allegations raised in paragraph seven of the complaint appear to allege pure violations of the criminal trespass statute and of art. 5154d § 2 of the mass picketing statute, raising issues that are of peripheral concern to the federal law, and of intensely local interest.[4] Moreover, deciding whether to enjoin the conduct challenged in state court is actually prohibited by the trespass and mass picketing statutes does not involve a determination of whether the "object" of the picketing is lawful or not. Thus, the plaintiffs' allegations of criminal trespass and violence appropriately invoke state court jurisdiction and are not removable under the court's federal question jurisdiction.[5]

The complaint does, however, contain other allegations that are not so readily classified as state claims. Paragraph six alleges that defendants "authorized, instigated, aided, condoned, and engaged in unlawful strike misconduct, obstructive picketing, and other actions interrupting and interfering with plaintiffs' business operations." This allegation, as well as those raised in paragraph eight, state claims that sound either in tortious interference with contractual relations under Texas law, or

---

**4.** As noted earlier, the Fifth Circuit recently upheld this portion of the mass picketing statute in the face of constitutional challenges. As far as can be determined, however, no court has addressed the issue of whether this provision is pre-empted by the LMRA. For the purposes of this order, it should be noted that this provision, and the temporary restraining order issued pursuant thereto, prohibits conduct very similar to that originally prohibited by the state court in *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), whose action was upheld by the Supreme Court.

**5.** Although the Supreme Court, in *Sears,* recognized that upholding state court jurisdiction over issues arguably within the exclusive jurisdiction of the NLRB may result in erroneous adjudications, it considered that risk to be mitigated by the fact that the aggrieved party could invoke the NLRB's jurisdiction and the protection of its remedial powers before, during, or even after the state litigation (including the issuance of an injunction). *See Sears,* 436 U.S. at 207 n. 43, 98 S.Ct. at 1763 n. 43.

artfully pleaded invocations of the LMRA itself. In either case, the NLRB would have exclusive jurisdiction of those claims, and, therefore, removal would be proper.

■ Texas courts recognize a cause of action for improper interference with contractual relations, and under Texas law a party has the right to be free from malicious interference with the right to conduct negotiations that have a reasonable probability of resulting in a contract. *Martin v. Phillips Petroleum Co.*, 455 S.W.2d 429, 435 (Tex.Civ.App.1970). Texas courts have also recognized a cause of action for tortious and wrongful interference with advantageous business relationships. *Cooper v. Steen*, 318 S.W.2d 750, 757 (Tex.Civ. App.1958).[6]

The Supreme Court has twice held that common law tort claims for malicious interference with an employment contract are pre-empted by the LMRA, because they are founded on conduct that is arguably within the ambit of the LMRA, 29 U.S.C. §§ 157, 158, and the issues raised in the state litigation are necessarily identical to those which otherwise would have been presented to the NLRB. *See Iron Workers v. Perko*, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed. 2d 646 (1963); *Local 926, International Union of Operating Engineers v. Jones*, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983). In each of these cases, an employee or supervisor was discharged as a result of a dispute with the union, and the employee subsequently brought suit in state court for interference with contract. The conduct that was the basis of the state actions in those cases arguably violated LMRA prohibitions against causing an employer to discriminate against an employee, and those proscribing the coercion of employees into foregoing their rights to engage in concerted activity. *See Local 926*, 460 U.S. at 678, 103 S.Ct. at 1460.

Although those specific provisions of the LMRA are not implicated by plaintiffs' alle-

gations of interference with business in this action, the LMRA also protects an employee's right to organize and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, 29 U.S.C. § 157, and prohibits the employer from interfering with those rights, 29 U.S.C. § 158. 29 U.S.C. § 158(b) also prohibits the labor organization from engaging in certain tactics, such as engaging in a strike, or coercing or threatening another person, if the *object* of such action is to "forc[e] or requir[e] any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processer or manufacturer, or to cease doing business with any other person.... 29 U.S.C. § 158(b)(4)(i)(B). It is possible that plaintiffs' allegations of interference with business, pleaded solely under state law, constitute an attempt to litigate issues implicated by these protections and prohibitions, especially the prohibition of secondary strikes. Thus, these allegations are arguably within the exclusive jurisdiction of the NLRB.

■ The next step, then, is to determine whether the conduct at issue is only a peripheral concern of the LMRA, or touches on interests deeply rooted in local feeling and responsibility. 29 U.S.C. § 158(b)(4) is not to be literally construed, and "much that might arguably be found to fall within the broad and somewhat vague concept of secondary boycott is not prohibited." *Local 761, International Union of Electrical, Radio & Machine Workers, AFL–CIO v. National Labor Relations Board*, 366 U.S. 667, 673, 81 S.Ct. 1285, 1289, 6 L.Ed.2d 592 (1961). The objectives of any picketing include a desire to influence others to withhold from the employer their services or trade. Indeed, "[a]lmost all picketing, even at the situs of the primary employer ..., hopes to achieve the forbidden objective, whatever other motives there may be and however small the

---

**6.** The elements of the tort of wrongful interference with a prospective contract right are as follows: the plaintiff must show that (1) there was a "reasonable probability that he would have entered into a contractual relationship; (2) the defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming plaintiff; (3) the defendant was not privileged or justified; and (4) actual harm or damage occurred as a result." *Duckworth v. Michael L. Field,* 516 F.2d 952 (5th Cir.1975).

chance of success." *Id.* at 673, 81 S.Ct. at 1289, *quoting National Labor Relations Board v. Local 294, International Brotherhood of Teamsters*, 284 F.2d 887, 890 (2nd Cir.1960). Indeed, not all secondary boycotts are outlawed by 29 U.S.C. § 158(b)(4). *Id.*, 366 U.S. at 672, 81 S.Ct. at 1289. However, the integrity of the comprehensive scheme for regulating labor-management relations requires that determinations of whether the object of a given picketing activity is lawful be made by the NLRB. Any allegation of unlawful interference with business necessarily raises issues concerning the object of concerted labor activity, an inquiry that remains within the exclusive jurisdiction of the NLRB. The exercise of state jurisdiction over an employer's tort claim of malicious interference with business against a collective bargaining unit entails significant risk of interfering with the regulatory jurisdiction of the NLRB and of generating conflicting substantive rules. *See Sears*, 436 U.S. at 196, 98 S.Ct. at 1757. Moreover, prohibitions against tortious interference with business implicate interstate commerce concerns more forcefully than they do matters of local interest. Therefore, plaintiff's allegations contained in paragraphs six and eight, concerning the object of defendants' picketing, necessarily raise federal issues that completely pre-empt their state claims, and removal was proper as to those claims.

By order entered February 10, 1989, plaintiffs' petition to remand was granted with respect to the allegations raised in paragraph seven of their original petition, and denied with respect to allegations raised in paragraphs six and eight. Because those claims not remanded to state court raise federal issues that fall, in the first instance, within the exclusive jurisdiction of the NLRB, they are outside this court's authority and must be dismissed. *Garmon*, 359 U.S. at 244–45, 79 S.Ct. at 779–80.

