# United States Court of Appeals
## For the First Circuit

No. 07-1806

MARGARET TORRES-RIVERA ET AL.,

Plaintiffs, Appellants,

v.

CHARLES O'NEILL-CANCEL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Lynch, Circuit Judge.

David A. Cerda, with whom Sigfredo A. Irizarry-Semidei was on brief, for appellants.
Luis A. Rodríguez Muñoz, with whom Roberto Sánchez Ramos, Secretary of Justice, Salvador Antonetti Stutts, Solicitor General, Eduardo Vera Ramírez, Eileen Landrón Guardiola, and Landrón & Vera, LLP were on brief, for appellee.

April 30, 2008

**SELYA**, **Senior Circuit Judge**.  After a lengthy battle to redeem egregious violations of their civil rights, the plaintiffs were granted attorneys' fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976 (the Fees Act), 42 U.S.C. § 1988.  They were later denied additional recompense for services rendered in (i) litigating the fee petition, (ii) attempting to collect the underlying judgments, and (iii) seeking statutory interest.  Displeased with the district court's calculation and apportionment of the fees awarded and with its rejection of their supplemental motion, the plaintiffs prosecuted this appeal.

After careful consideration of a tangled record, we conclude that the district court abused its discretion in two respects.  First, the court used an inappropriate methodology in apportioning the original fee award.  Second, despite the plaintiffs' presumptive entitlement to further relief, the court failed adequately to explain its denial of the supplemental motion.  Consequently, we vacate the orders appealed from and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

Our earlier opinion in Torres-Rivera v. O'Neill-Cancel (Torres-Rivera I), 406 F.3d 43 (1st Cir. 2005), contains an exegetic account of the events that form the backdrop for the orders at issue.  We urge the reader who hungers for further detail

to consult that opinion and rehearse here only those facts needed to put this appeal into perspective.

In August of 1998, Ernesto Espada-Cruz (Espada), a Puerto Rico police officer, beat two teenage boys, Angel Santiago-Cora (Santiago) and Ernid Gómez. Charles O'Neill-Cancel (O'Neill), an agent of the Puerto Rico Treasury Department, stood by without intervening and trained his gun first on Gómez and then on Gómez's mother, Margaret Torres-Rivera (who witnessed the attack).

On August 27, 1999, Torres-Rivera and the two boys sued O'Neill and Espada under 42 U.S.C. § 1983 and Puerto Rico tort law.[1] The Commonwealth of Puerto Rico agreed to represent O'Neill but not Espada.

Espada failed to answer the complaint and the clerk of court entered a default against him on June 19, 2000. See Fed. R. Civ. P. 55(a). O'Neill answered the complaint and later moved unsuccessfully for summary judgment. A flurry of activity followed, including an interlocutory appeal, several motions, and protracted pretrial discovery involving O'Neill and the plaintiffs.

This skirmishing culminated in a five-day trial that began on August 6, 2003. Espada did not participate in the trial. O'Neill, represented by four attorneys, mounted a ferocious defense.

---

[1]Three other plaintiffs who asserted derivative claims fell by the wayside during the course of the litigation. They are not parties to this appeal.

At the end of the plaintiffs' case in chief, the district court granted O'Neill's motion for judgment as a matter of law vis-à-vis Santiago. See Fed. R. Civ. P. 50(a). At the close of all the evidence, the court submitted the remaining claims to the jury (including questions as to the amount of damages to be assessed against the defaulted defendant, Espada). The jurors found O'Neill liable to Gómez for violating his Fourth Amendment rights by failing to intervene notwithstanding Espada's use of excessive force. They also found him liable to Torres-Rivera under local law for negligently causing her harm. Espada's liability to all three plaintiffs was assumed by reason of the default.

The jurors awarded damages as follows: $100,000 for Gómez against O'Neill; $20,000 for Torres-Rivera against O'Neill; $100,000 for Gómez against Espada; $20,000 for Torres-Rivera against Espada; and $100,000 for Santiago against Espada. O'Neill appealed, but to no avail. See Torres-Rivera I, 406 F.3d at 55. Espada did not appeal.

In due course, the plaintiffs moved under the Fees Act for attorneys' fees referable to services rendered through October 9, 2005. The district court granted fees in an amount that the plaintiffs thought was too meager. When the plaintiffs moved for reconsideration, the court revised the award, using the lodestar method. Torres-Rivera v. Espada-Cruz (Torres-Rivera II), Civ. No. 99-1972, 2007 WL 906176, at *3 (D.P.R. Mar. 22, 2007). As part of

-4-

its calculations, the court made a fifteen percent global reduction to take account of what it characterized as overly generic descriptions of time expended. Id. at *2-3. It then apportioned responsibility for payment of the award between the defendants based on the relative damages assessed against each of them by the jury. Id. at *3. Thus, the court ordered the overall award ($101,584.45) to be paid thirty-five percent by O'Neill and sixty-five percent by Espada. Id.

During some of the time that the fee petition was pending, the underlying judgments remained unsatisfied. Eventually, the plaintiffs filed a supplemental motion seeking payment of attorneys' fees generated after October 9, 2005 in litigating the fee petition itself and in litigating to compel payment not only of the judgments but also of interest thereon. The district court, without explanation, denied this motion. See Torres-Rivera v. Espada-Cruz, Civ. No. 99-1972 (D.P.R. Feb. 2, 2007) (unpublished order).

O'Neill paid the damages judgments against him on or about October 28, 2005; but as of March 27, 2008, he had not paid any post-judgment interest. Espada has not paid any part of the judgments or fees and is apparently judgment-proof.

The plaintiffs appeal both the fee award and the denial of their supplemental motion. Our standard of review is familiar. We review a fee award for abuse of discretion. Coutin v. Young &

-5-

Rubicam P.R., Inc., 124 F.3d 331, 336 (1st Cir. 1997). A district court may abuse its discretion if it fails to consider a significant factor in the decisional calculus, if it relies on an improper factor in working that calculus, or if it considers all the appropriate factors but makes a serious error in judgment as to their relative weight. Id. Within this framework, an error of law is always tantamount to an abuse of discretion. See Rosario-Urdaz v. Rivera-Hernández, 350 F.3d 219, 221 (1st Cir. 2003).

## II. ANALYSIS

On appeal, the plaintiffs advance three claims. They assert that the district court erred in (i) apportioning fees based on the defendants' relative liability for damages, (ii) applying a global reduction to their fee request, and (iii) denying them fees for their efforts in litigating the fee petition and trying to collect the underlying judgments (including the accrued interest). We address these claims of error sequentially.

First, we sketch the legal landscape. Congress authored the Fees Act as a means of encouraging persons to seek redress for civil rights violations through judicial avenues. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Coutin, 124 F.3d at 337. Under that statute, a prevailing party in a civil rights suit is entitled to reasonable attorneys' fees "unless special circumstances would render such an award unjust." Hensley, 461

U.S. at 429 (quoting S. Rep. No. 94-1011, at 4 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5912).

A reasonable fee typically is determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure. Hensley, 461 U.S. at 433; Coutin, 124 F.3d at 337. In fashioning the lodestar, a district court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Hensley, 461 U.S. at 434. Subject to principles of interconnectedness, see, e.g., Lipsett v. Blanco, 975 F.2d 934, 940-41 (1st Cir. 1992), the court may disallow time spent in litigating failed claims. It also may adjust the lodestar itself, upwards or downwards, based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious handling of the matter. See Hensley, 461 U.S. at 430 n.3, 434 n.9; Coutin, 124 F.3d at 337.

Reasonableness in this context is largely a matter of informed judgment. There are, however, guideposts in the case law. For instance, a district court may deem an expenditure of time unreasonable if the reported hours are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434; see, e.g., United States v. Metro. Dist. Comm'n, 847 F.2d 12, 18-19 (1st Cir. 1988); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952-55 (1st

Cir. 1984). By like token, it may discount or disallow the total hours claimed if it determines that the time is insufficiently documented. Hensley, 461 U.S. at 433; see Grendel's Den, 749 F.2d at 952.

Of particular pertinence for present purposes, time records may be too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like. In that event, the court may either discount or disallow those hours. See, e.g., Tenn. Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994); see also Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001) (warning that failure to keep time records "in reasonable detail" is apt to "have deleterious consequences").

After determining the time reasonably expended by the prevailing party's legal team, the court must focus on the rates to be applied to those hours. See, e.g., Grendel's Den, 749 F.2d at 955. We eschew any more precise description of that process, as this appeal does not involve any rate-based challenge to the district court's computations.

When the district court arrives at the lodestar and completes its consideration of possible adjustments, it ought to provide a "concise but clear" explanation of its calculation of the resultant fee award. Hensley, 461 U.S. at 437. Alternatively, a reviewing court sometimes may be able to infer the district court's

reasoning from the record as a whole.  Cf. United States v. Arango, 508 F.3d 34, 48 (1st Cir. 2007) (inferring trial court's reasoning from the record in criminal sentencing context).  We emphasize, however, that the district court's explanation is valuable, and the requirement ought not to be sidestepped routinely.

Where the plaintiffs have prevailed over more than one defendant, the court must take an additional step: it must determine whether the fee award should run jointly and severally against the defendants or, if not, what portion of the award each defendant should bear.  See Grendel's Den, 749 F.2d at 959.  In cases in which apportionment is the preferred option, there is no uniform prescription as to how to effect that result.  Rather, a district court in a multi-defendant case must choose among a variety of modalities.  These modalities include equal division among the defendants, division by relative liability, and division by assignment of the time reasonably expended in litigating against each defendant.  Id. at 959-60.  The appropriate choice among these modalities depends on the contours and idiosyncracies of the particular case.  Id. at 960.  The guiding principle is equity; the district court should strive to determine "the most fair and sensible solution" for apportioning the fee award.  Id.

Allocation of fees by time expended is the default modality in certain circumstances: that method is ordinarily the most appropriate when, in a multi-defendant case in which joint and

several responsibility has been deemed inappropriate, the relative time dedicated to litigating with one defendant is clearly disproportionate to the time required to litigate with another defendant.

Our decision in Grendel's Den illustrates this point. There, the district court considered only that both defendants had "participate[d] to some degree at every stage of the litigation" and apportioned the awarded fees equally between them. Id. On appeal, we modified that order because one defendant had mounted three times the opposition as had the other defendant. Id. (holding that equity required that seventy-five percent of the fee award be allocated against the former defendant).

Other federal appellate courts have enunciated similar tenets and concluded that, when the defensive efforts mustered by one defendant have been markedly more robust than the defensive efforts mustered by another, the relative time spent litigating against each of them is the appropriate methodology by which to apportion an award of attorneys' fees. For example, the Ninth Circuit has held that, under fairness principles, markedly unequal efforts by each defendant require apportionment by the "time expended" method. Corder v. Gates, 947 F.2d 374, 382-83 (9th Cir. 1991). In so holding, the court stated that "the party that is the focus of the litigation should ordinarily bear the bulk of the litigation's costs," especially when "the time expended by the

-10-

plaintiff in pursuing each defendant [is] grossly unequal." Id. (emphasis in original). Other cases reflect similar reasoning. See, e.g., Nash v. Chandler, 848 F.2d 567, 574 (5th Cir. 1988) (deeming time expended the most equitable method of apportionment as to one defendant who, unlike other defendants, was not a principal in the litigation); Se. Legal Def. Group v. Adams, 657 F.2d 1118, 1126 (9th Cir. 1981) (upholding apportionment by time expended because three-quarters of the plaintiff's efforts were directed toward one defendant alone).

## A.  **The Apportionment of Fees**.

        Against this background, we return to the case at hand. The district court decided that the responsibility for fees should not run jointly and severally, and that apportionment was in order; no one disputes either of these eminently reasonable decisions. The court proceeded to use the "relative liability" method as a means of effectuating that apportionment, comparing the damages assessed against each defendant to apportion the awarded attorneys' fees. See Torres-Rivera II, 2007 WL 906176, at *3. Because the total damages assessed against Espada were sixty-five percent of the aggregate damages awarded, the court apportioned responsibility for payment of the fees sixty-five percent to Espada and thirty-five percent to O'Neill.[2]  The court based this division on the

_____

        [2]We note in passing that Santiago's claim against Espada was successful but his claim against O'Neill was not. Thus, there may be a question as to whether — and for what purposes — Santiago

-11-

following arithmetic: it divided each of the portions of the damages awarded against Espada and O'Neill ($220,000 and $120,000, respectively) by the total damages award ($340,000). This calculation resulted in sixty-five percent responsibility for Espada and thirty-five percent for O'Neill.

The issue here is the district court's selection of a "relative liability" method of apportionment. The plaintiffs take umbrage at that choice. They asseverate that since O'Neill was the only defendant to mount a defense — and a ferocious one at that — their lawyers spent virtually all of their time litigating against him. Conversely, very little time was spent litigating against Espada. On this basis, they posit that O'Neill should be held responsible for the lion's share of the awarded fees.

O'Neill disagrees with this construct. He emphasizes the broad discretion vested in the district court and argues that a "relative liability" apportionment of the fee award falls within the encincture of that discretion.

This is a case in which the considerable time spent by the plaintiffs in litigating against O'Neill dwarfs the rather modest amount of time spent in litigating against Espada. O'Neill, as was his right, mounted a Stalingrad-type defense, employing four lawyers and battling the plaintiffs at every turn. By contrast,

should be deemed a prevailing party. But because O'Neill has not raised this issue on appeal, we do not probe the point more deeply.

-12-

Espada never answered the complaint but, rather, defaulted while the litigation was in an embryonic stage. The time, effort, and energy involved in litigating against O'Neill — a take-no-prisoners opponent — scarcely can be compared to the time, effort, and energy involved in securing a default and proving damages against a non-appearing party.

Of course, Espada's actions were front and center. The claims against O'Neill were based on multiple theories of failure to intervene to prevent Espada's unlawful behavior. The first of these required the plaintiffs to show that Espada used excessive force; that O'Neill observed what was transpiring; and that he took no action to prevent the ongoing mayhem. See Torres-Rivera I, 406 F.3d at 51-52. The second theory required the plaintiffs to show that O'Neill assisted Espada in placing one or both of the victims in harm's way. See id. at 52.

So viewed, developing the claims against O'Neill depended in part on developing the basis for a case against Espada. But given the entry of default, the plaintiffs would not have had to make the case against Espada except for O'Neill's decision to resist the claims against him. See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 693 (1st Cir. 1993) ("[A]n entry of a default against a defendant establishes the defendant's liability.").

The rule that we glean from the case law runs along the following lines. Where apportionment is indicated, the choice among available options generally lies within the district court's sound discretion. See Grendel's Den, 749 F.2d at 960. But when the time required to litigate against one defendant is grossly disproportionate to the time required to litigate against another defendant and the two defendants are not in privity, then the time expended method of apportionment should be used. See, e.g., Corder, 947 F.2d at 383.

This is a case of the latter stripe: because Espada defaulted, the plaintiffs had no need to spend significant time either in preparing a case against him or in presenting that case to the jury.[3] Thus, it was O'Neill, as the lone defendant actually contesting the plaintiffs' proof, who caused the plaintiffs to incur the bulk of the time expended. The short of it, then, is that the amount of time spent in mounting the case against O'Neill was grossly disproportionate to the amount of time spent in litigating against Espada.

---

[3]To be sure, the plaintiffs had to prove damages against Espada. See Fed. R. Civ. P. 55(b)(2); In re Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002) ("A hearing may be required . . . to set damages [in a default judgment scenario] when the amount is in dispute or is not ascertainable from the pleadings."). But the "time expended" method will take full account of any work involved in that endeavor. To the extent that the time overlaps with the time spent in proving damages against O'Neill, it is, of course, subject to equitable allocation. That is a matter that the district court may consider on remand.

We have carefully perused the record, the district court's explanation of the fee award, and the court's comments on the choice of a "relative liability" method of apportionment. See Torres Rivera II, 2007 WL 906176, at *3. It is clear from that perusal that the district court did not appropriately weigh the disparity in time expended, nor did it offer any adequate justification for veering off in the direction of "relative liability." Fairness and equity dictate that, given this inequality and the apparent absence of any offsetting circumstances, the court should as a matter of law have used the "time expended" method of apportionment and calculated the approximate time spent in litigating against each defendant. See Grendel's Den, 749 F.2d at 960 (explaining that a court undertaking to fashion a fee award should "make every effort to achieve the most fair and sensible solution that is possible"). The fee award, therefore, cannot stand.

### B. **The Global Reduction**.

Even though vacation of the fee award is in order, see supra Part II (A), we are mindful that the plaintiffs have contested the global reduction essayed by the district court in calculating the lodestar. When reallocating the responsibility for payment of the award, the district court will once again have to begin with its extant lodestar computation (which includes the

-15-

fifteen percent global reduction).  Thus, it behooves us to resolve this contretemps here and now.

The lower court explained that many of the time entries logged by the plaintiffs' attorneys failed adequately to describe the tasks for which the time was expended.  Torres-Rivera II, 2007 WL 906176, at *1.  This impeded the court's ability to evaluate the utility of those hours.  Id. at *2.  To compensate, the court treated the offending entries as block billing and reduced the fee request by fifteen percent.  Id. at *1-2.  The plaintiffs challenge this global reduction.

This assignment of error engenders abuse of discretion review.  See, e.g., Gay Officers, 247 F.3d at 292-93.  Attorneys' time records, submitted in support of fee requests, often contain questionable entries, and the district court's discretion in separating wheat from chaff is quite broad.  See id. at 295-96; Lipsett, 975 F.2d at 937.  Nothing in the record conduces to the view that the district court abused its discretion in effecting the global reduction at issue here.

The judge had managed the case for several years and had presided over the trial.  She was intimately familiar with the nuances of the litigation.  She canvassed the time records and provided a plausible rationale for her binary decision to discount generic time entries and to shrink the overall award.  No more was exigible.

The prevailing party has the burden of proving the reasonableness of the hours claimed. See Hensley, 461 U.S. at 433. Where that party furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues. See Tenn. Gas Pipeline, 32 F.3d at 634. In such a circumstance, the court may adjust those entries to achieve an equitable result. See id.; Grendel's Den, 749 F.2d at 951-52.

To be sure, the district court's discretion in this regard is not unbounded. Here, however, the court's description of the entries as "generic" appears apt. Moreover, the court sensibly explained what it was doing and why it felt impelled to make the adjustment. Our case law has acknowledged that in the fee-shifting milieu reasonableness is not an absolute but a range. See, e.g., Metro. Dist. Comm'n, 847 F.2d at 17. On this record, the decision to make the fifteen percent global reduction plainly falls within the range of reasonableness.

## C. **The Supplemental Motion**.

The district court denied without explanation the plaintiffs' supplemental motion for additional attorneys' fees. The plaintiffs' last challenge implicates this ruling.

A prevailing party in a civil rights action normally is entitled to attorneys' fees incurred in the pursuit of fees under section 1988. See, e.g., Brewster v. Dukakis, 3 F.3d 488, 494 (1st

-17-

Cir. 1993); Bond v. Stanton, 630 F.2d 1231, 1235 (7th Cir. 1980) (collecting cases). In awarding such fees, the reasonableness requirement applies without diminution. See Lund v. Affleck, 587 F.2d 75, 77 (1st Cir. 1978). Because litigating a fee petition is typically an uncomplicated exercise, fees for such work are often calculated at lower rates than those deemed reasonable for the main litigation. See, e.g., Brewster, 3 F.3d at 494; Gabriele v. Southworth, 712 F.2d 1505, 1507 (1st Cir. 1983). Prevailing parties in civil rights cases also may recover reasonable attorneys' fees incurred in successfully litigating a variety of post-judgment motions. See, e.g., Webb v. Ada County, 285 F.3d 829, 835 (9th Cir. 2002) (awarding fees for litigation related to enforcement of court-ordered relief); Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999) (explaining that reasonable attorneys' fees are in order when a prevailing party takes action to realize upon, or to defend, a favorable judgment).

These principles inform our treatment of this claim of error. The original fee application was hotly contested, and litigation over fees was required to perfect the plaintiffs' rights under section 1988. By the same token, the underlying judgments were not seasonably paid and collection efforts were at least arguably necessary. Finally, the plaintiffs were entitled to post-judgment interest up until the date that the damages judgments were

paid.  See 28 U.S.C. § 1961.  Yet as of March 27, 2008, no accrued interest had been tendered.

There is a presumption that the plaintiffs, as prevailing parties, are entitled to recover reasonable attorneys' fees with respect to these matters.  See, e.g., Weyant, 198 F.3d at 316; McDonald v. Sec'y of HHS, 884 F.2d 1468, 1480 (1st Cir. 1989). While there may be reasons why the plaintiffs are not entitled to recover further sums pursuant to the supplemental motion, none are apparent from the face of the record and the district court's opaque ruling sheds no light on that possibility.  Without some reasoning sufficient to explain why recovery is inappropriate, there is no principled way in which we can uphold the outright denial of the supplemental motion.  Accordingly, that order must be set aside and the matter remanded for reconsideration.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we vacate both the fee award and the order denying the plaintiffs' supplemental motion.  This case has been pending for several years. Thus, we direct the district court, on remand, to give expeditious consideration to this last vestige of the matter.

**We vacate the orders appealed from and remand the case to the district court for further proceedings consistent with this opinion.  In addition to the matters discussed above, the district**

-19-

**court shall consider the plaintiffs' entitlement vel non to fees incurred in connection with the aspects of this appeal as to which the plaintiffs may be deemed prevailing parties and shall award a reasonable fee for those services**. **See** 1st Cir. R. 39.1(b).