Andres GUILLEMARD–GINORIO,
et als., Plaintiffs,

v.

Fermin CONTRERAS, et
als., Defendants.

Civ. No. 03–2317 (PG).

United States District Court,
D. Puerto Rico.

March 18, 2009.

Joan Schlump–Peters, Monique Guillemard–Noble, Nachman & Guillemard, San Juan, PR, PHV Jeffrey J. Pyle, PHV Joseph D. Steinfield, Prince Lobel Glovsky & Tye LLP, Boston, MA, for Plaintiffs.

Angel E. Rotger-Sabat, Maymi, Rivera & Rotger, P.S.C., Ivette M. Berrios, San Juan, PR, Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Courtney R. Carroll, Luis A. Rodriguez–Munoz, Landron & Vera LLP, Guaynabo, PR, for Defendants.

### AMENDED OPINION AND ORDER NUNC PRO TUNC [1]

JUAN M. PEREZ–GIMENEZ, District Judge.

Before the Court now is Plaintiffs' motion for attorneys' fees and costs and the Defendants' opposition thereto. Pursuant to 42 U.S.C. § 1988, Plaintiffs request an award of $2,758,595.50 in attorney fees and $108,506.04 in costs and expenses. After considering the submissions on record and the applicable law, Plaintiffs' request is hereby **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

### I. BACKGROUND

Andres Guillemard–Ginorio ("Guillemard") and his spouse, Maria Noble–Fernandez ("Noble"), both well-known members of the New Progressive Party ("NPP"), have held insurance licenses as insurance agents for approximately 20 years. Guillemard and Noble have conducted their business through the entity Lone Star Insurance Producers, Inc. ("Lone Star"). Early in 2001, Fermin M.

---

**1.** Rule 60(a) of the Federal Rules of Civil Procedure provides the vehicle through which a court can correct its own clerical errors. Specifically, the Rule states in its pertinent part that "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Fed.R.Civ.P. 60(a). There is no question that the type of mistake involved in the present case is of the type envisioned by Rule 60(a). The Supreme Court has recognized a district court's plenary power to correct its own clerical mistakes. *See Gagnon v. United States,* 193 U.S. 451, 24 S.Ct. 510, 48 L.Ed. 745 (1904) (Holding that it is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have been issued due to inadvertence or mistake). Accordingly, the Opinion & Order issued by this Court on August 25, 2008, 575 F.Supp.2d 346 (D.P.R.2009), is hereby Amended *Nunc pro tunc.*

Contreras ("Contreras") became the Insurance Commissioner for Puerto Rico. Shortly thereafter, Lone Star and its shareholders became subject of an investigation carried out by the Office of the Insurance Commissioner ("OIC"). In 2002, Guillemard and Noble learned that Contreras was making disparaging remarks about Guillemard and Noble's membership in the NPP. They also learned that the OIC had issued subpoenas to several Puerto Rico banks demanding account information for all transactions involving Guillemard, Noble, or Lone Star.

On December 10, 2003, Lone Star, Guillemard and Noble, and the conjugal partnership constituted between them (collectively the "Plaintiffs") filed suit seeking redress pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983 for violations of their civil rights and a declaratory judgment. The Plaintiffs sued Contreras for damages in his individual capacity and for injunctive relief in his official capacity, his wife Jane Doe, the Office of the Insurance Commissioner (the "OIC"), and various John Doe and Jane Doe defendants. *See* Docket No. 1. The Plaintiffs alleged that Contreras' investigation was motivated by political animus, that it violated Plaintiffs' equal protection of the laws and that the bank subpoenas constituted an invasion of privacy under local law.

On December 23, 2003, Contreras, without affording them with notice or an opportunity to be heard, issued an order ("the Order") declaring the Lone Star Plaintiffs as non-trustworthy and incompetent. Furthermore, the Order purported to revoke their insurance agent licenses for a period of five years, prevent them from applying for any other license during the same five-year period, and impose a fine in the amount of two-million thirty-five thousand dollars ($2,035,000). The Order would become effective on January 7, 2004. The Order also informed the Lone Star Plaintiffs of their right to request a hearing within twenty (20) days from the Order, which would stay the imposition of the fine. The revocation of their licenses, however, would remain in effect pending a hearing and a final decision.

On December 30, 2003, Plaintiffs filed an amended complaint, *see* Docket No. 7, and moved the Court for the issuance of a Temporary Restraining Order ("TRO") enjoining Defendants from revoking the Lone Star Plaintiffs' insurance agent licenses pending a pre-deprivation hearing, *see* Docket No. 8. Plaintiffs alleged, *inter alia*, that in issuing the December 23, 2003 Order without a hearing and in retaliation for their political beliefs, the Defendants violated Plaintiffs' rights under the First Amendment and the Due Process and Equal Protection Clauses, as well as state law provisions. On December 31, 2003, the Court granted Plaintiffs' request and issued a TRO enjoining Defendants from revoking the Lone Star Plaintiffs' insurance agent licenses. Thereafter, on January 20, 2004, the Court held a hearing regarding Plaintiffs' request for the entry of preliminary injunctive relief and this request was also granted, *see* Docket No. 31.

A month later, on February 19, 2004, Contreras, in his official and individual capacity, and the OIC filed a motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). *See* Docket No. 38. The Court denied their request. *See* Docket No. 57. Contreras an the OIC filed two interlocutory appeals challenging this Court's entry of a preliminary injunction and denial of the motion to dismiss. *See* Dockets No. 33, 72. However, on December 13, 2005, the appeal of this Court's order granting a preliminary injunction was dismissed as moot, and the denial of the motion to dismiss was af-

firmed. *See Guillemard–Ginorio v. Contreras*, 161 Fed.Appx. 24 (1st Cir.2005).

Then, on June 6, 2004, Plaintiffs amended the complaint to include Dorelisse ("Juarbe")[2] as a defendant in her individual and official capacity as the current Insurance Commissioner. *See* Docket No. 58. Discovery ensued and extended for a period of more than two years during which Plaintiffs filed several motions to compel discovery.

On May 20, 2005, Plaintiffs moved for the entry of partial summary judgment on their due process claims. *See* Dockets Ho. 204–207. On June 7, 2005, the Defendants opposed the motion and cross-moved for summary judgment, seeking dismissal of the complaint. *See* Docket Nos. 216, 218, 220, 221. On January 10, 2006, the Court granted Plaintiffs' motion for partial summary judgment and denied the Defendants'. *See* 409 F.Supp.2d 101 (D.P.R. 2006). With respect to Defendants' claim of qualified immunity on the due process claim, this Court held that Defendants were not entitled to summary judgment because a material issue of fact remained as to the third prong of the qualified immunity analysis, namely, whether a reasonable official in Contreras's position would have been justified in revoking Plaintiffs' license without a prior hearing. With respect to the Defendants' assertion of qualified immunity on the other claims, we held that because the Defendants did not properly raise these arguments before the Magistrate–Judge, we would not consider their assertion of qualified immunity in relation only to the due process claim. Once again, the Defendants appealed. *See* Docket No. 312.

Defendants later filed a motion to vacate this Court's judgment pursuant to Fed. R.Civ.P. 60(b) based on the newly discovered evidence. This evidence consisted of a Puerto Rico appellate court decision holding that an interpretation that the Insurance Code prohibits commission sharing was reasonable. *See* Dockets No. 315–316. On April 3, 2006, this Court denied the motion to vacate, finding that the Puerto Rico appellate court decision was irrelevant to its ruling. *See* Docket No. 322. The Defendants also appealed this ruling. *See* Docket No. 324.

On June 12, 2007, 490 F.3d 31 (1st Cir. 2007), the First Circuit affirmed this Court's order and held that the Defendants had waived their qualified immunity defense as to the First Amendment claims, that they were not entitled to qualified immunity on the due process claim, and that the Court of Appeals lacked jurisdiction to review this Court's denial of the motion to vacate.

A jury trial was finally scheduled for September 17, 2007 and it was completed on October 8, 2007. The jury found as follows:

1. Procedural Due Process: in favor of Guillemard, Noble and Lone Star and against both Contreras and Juarbe.

2. First Amendment discrimination claim against Contreras regarding the investigation: in favor of the defendant Contreras.

3. First Amendment claim regarding the December 23, 2003 Order: in favor of Guillemard and Noble against Contreras only.

4. First Amendment retaliation claim: in favor of Guillemard and Noble against Contreras only.

5. "Selective Enforcement" claim under the Equal Protection Clause: in favor

---

**2.** Hereinafter, Contreras, the OIC and Juarbe will also be collectively referred to as the "Defendants".

of Guillemard and Noble against Contreras only.

6. "Class of One" claim under the Equal Protection Clause: in favor of Guillemard and Noble against both Contreras and Juarbe.

7. Defamation claim against Contreras: in favor of Guillemard, Noble and Lone Star.

8. Negligence claim: in favor of all plaintiffs against all Defendants.

9. Right to privacy claim: in favor of Guillemard and Noble against both Contreras and Juarbe.

Therefore, Plaintiffs did not succeed in their "Selective Enforcement" Equal Protection and First Amendment claims against Juarbe. Plaintiffs also did not succeed in their First Amendment claim against Contreras regarding the investigation. Thus, Plaintiffs did not succeed in three (3) of the seven (7) claims against Juarbe and in one (1) of the nine (9) claims against Contreras. A total of $4,755,000.00 was awarded to Plaintiffs, of which $3,080,000.00 (65%) corresponds to Contreras and $1,675,000.00 (35%) corresponds to Juarbe.

## II. DISCUSSION

"Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id.* Therefore, in any action enforcing the provisions of Section 1983, such as the instant one, 42 U.S.C. § 1988(b) governs attorney fee awards.

 Section 1988(b) states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Notwithstanding the discretionary language of the statute, "[i]n civil rights cases, fee-shifting in favor of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a prevailing defendant is the exception." *Casa Marie Hogar Geriatrico, Inc. v. Rivera–Santos*, 38 F.3d 615, 618 (1st Cir. 1994). Both the legislative history and case law since the enactment of Section 1988 indicate that fees should be awarded to successful plaintiffs absent unusual circumstances. *See Williams v. Hanover Housing Authority*, 113 F.3d 1294, 1300 (1st Cir.1997).

 In adjudicating a request for attorney fees, the Court needs to determine whether: (1) a party is in fact a "prevailing party"; (2) the compensation sought is reasonable (i.e. calculation of the lodestar); and (3) there are any additional but exceptional considerations that may require to adjust upward or downward. *See Hensley v. Eckerhart*, 461 U.S. at 433–34, 103 S.Ct. 1933 (1983). "A plaintiff is a prevailing party if he has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." *Rosario–Urdaz v. Rivera–Hernandez*, 451 F.Supp.2d 305, 308 (D.P.R.2006) (*citing Texas State Teachers Assoc. v. Garland Indep. School District*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Once plaintiff comes across this threshold, the district court must then determine what fee is reasonable. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933.

Under 42 U.S.C. § 1988, a trial court generally should employ the lodestar method to calculate fees. *Bogan v. City of Boston*, 489 F.3d 417, 426 (1st Cir.2007). Under this method, "the court must determine the hours reasonably expended on the litigation, multiplied by a reasonable

hourly rate." *Tejada–Batista v. Fuentes–Agostini,* 263 F.Supp.2d 321, 326 (D.P.R. 2003) (*citing Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 295 (1st Cir.2001)). A court usually should begin with the attorneys' contemporaneous billing records. *Gay Officers Action League,* 247 F.3d at 295. "In fashioning the lodestar, a district court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 336 (1st Cir. 2008) (internal citations omitted). "Subject to principles of interconnectedness, . . ., the court may disallow time spent in litigating failed claims." *Id.* (*citing Lipsett v. Blanco,* 975 F.2d 934, 940–41 (1st Cir. 1992)).

■ Nevertheless, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward. . . ." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933 (1983). The court may then adjust the award further for several reasons, such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974); *see also Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. 1933, *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 n. 3 (1st Cir.1997).

■ "Where the plaintiffs have prevailed over more than one defendant, the court must take an additional step: it must determine whether the fee award should run jointly and severally against the defendants or, if not, what portion of the award each defendant should bear." *Torres–Rivera,* 524 F.3d at 337 (*citing Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 959 (1st Cir.1984)).

> In cases in which apportionment is the preferred option, there is no uniform prescription as to how to effect that result. Rather, a district court in a multi-defendant case must choose among a variety of modalities. These modalities include equal division among the defendants, division by relative liability, and division by assignment of the time reasonably expended in litigating against each defendant. . . . The appropriate choice among these modalities depends on the contours and idiosyncrasies of the particular case. . . . The guiding principle is equity; the district court should strive to determine the most fair and sensible solution for apportioning the fee award.

*Id.* (internal citations and quotation marks omitted). Finally, in order to receive the proper award of attorney fees, a prevailing party must submit with its motion evidence to support the number of hours and rates sought, and show that the rates being sought are comparable to those in the community. *See Hensley,* 461 U.S. 424, 433, 103 S.Ct. 1933 (1983).

In the instant case, Plaintiffs undoubtedly prevailed in their Section 1983 civil rights claim, therefore, they are entitled to attorney fees.

## A. Hourly Rate

In their memorandum in support of attorney fees (Docket No. 461), Plaintiffs argue that the rates charged by their attorneys are reasonable, and that alternatively, the complexity of the case and the attorneys' experience justify a higher rate. In their opposition, Defendants argue that the hourly rates charged by Plaintiffs' attorneys, law clerks and paralegals are excessive. The Defendants contend that Attorney Steinfield's rate of $425 per hour; Attorney Joan Schlump–Peters' rate of $250 per hour; and Attorney Jeffery Pyle's rate of $215 per hour is excessive.[3] *See* Docket No. 486. In addition, Defendants point out that Plaintiffs seek rates for law clerks at a range of $110 to $185 per hour, and for paralegals at rates ranging from $80 to $120 per hour, which according to Defendants are excessive.

■ The lodestar method requires that the hourly rate used by the Court be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Tejada–Batista*, 263 F.Supp.2d at 327 (*quoting Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Under First Circuit law, there is a presumption that the proper rate to be applied to the work of out-of-town counsel is that of the forum community, rather than that which the attorney charges in the community in which he or she practices. *Vieques Conservation and Historical Trust, Inc.*, 313 F.Supp.2d at 46 (*quoting Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983)). "In reaching its determination, the court may rely upon its own knowledge of attorneys' fees in the community." *Rodriguez v. International College of Business and Technology, Inc.*, 356 F.Supp.2d 92, 96 (D.P.R.2005) (*citing Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).

■ Once this so-called "lodestar" figure is established, the court has the discretion in "cases of exceptional success" to make an enhanced award. *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. A very recent First Circuit opinion has re-emphasized the "extremely broad" discretion of the trial court in setting fee awards. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 70–71 (1st Cir.2009). Accordingly, the "resulting "lodestar" amount may be adjusted for any of several reasons, including the quantum of success achieved in the litigation." *Bogan v. City of Boston*, 489 F.3d at 426 (*citing Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 n. 3 (1st Cir.1997)).

■ In addition, courts may award different rates depending on whether the time was invested in-court or out-of-court. *See Ciudadana v. Gracia–Morales*, 359 F.Supp.2d 38, 45 (D.P.R.2005) (finding rates of $200.00 an hour for out-of-court work and $225.00 an hour in-court work justified); *International College of Business and Technology, Inc.*, 356 F.Supp.2d at 96–97 (finding rate of $190 and $125 to be appropriate); *Top Entertainment Corp. v. Torrejon*, 349 F.Supp.2d 248, 253–255 (D.P.R.2004) (finding hourly rate of $125.00 reasonable); *Anywhere, Inc. v. Romero*, 344 F.Supp.2d 345, 348 (D.P.R.

---

**3.** The Court notes that Plaintiffs request the same hourly rate for both the time spent in-court as well as out-of court without making any distinction on whether the same was performed in-court or out-of-court. However, following this District's case law, the Court will differentiate the rates and award the same depending on whether the time was invested in-court or out-of-court. *See Ciudadana v. Gracia–Morales*, 359 F.Supp.2d 38, 45 (D.P.R.2005) (finding rates of $200.00 an hour for out-of-court work and $225.00 an hour in-court work justified).

2004) (finding that an hourly rate of $250.00 for the more experienced attorney and of $150.00 for the less experienced attorneys reasonable); *Vieques Conservation and Historical Trust, Inc. v. Martinez,* 313 F.Supp.2d 40, 47 (D.P.R.2004) (reducing attorney's hourly rate to $225 to equate with local rates); *Rodriguez–Sostre v. Municipio De Canovanas,* 251 F.Supp.2d 1055, 1058 (D.P.R.2003) (awarding $225.00 to $250.00 for in-court time and $200.00 for out-of-court time).

 Some of the attorneys for whom Plaintiffs seek payment of fees— Attorney Joseph Steinfield and Attorney Jeffrey J. Pyle—appeared pro hac vice in this case. They now seek rates comparable to the community in which they practice: Boston. In determining the multiplier for a lodestar award—the applicable hourly rate—an inquiring court should look to "the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). However, when a party recruits counsel from outside the vicinage of the forum court, that court may deem the "relevant community" to be the community in which the lawyer maintains his or her principal office. *See Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir.1983). "In that event, the court may look to the outside lawyer's actual billing practices to determine the relevant rate." *United States v. One Star Class,* 546 F.3d 26, 27 (1st Cir.2008).

 In the fee-shifting context, a district court's primary concern is with the market value of counsel's services. *Id.* at 28. *Also see In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 568 (7th Cir.1992). Thus, the rate that private counsel actually charges for his/her services, while not conclusive, is a reliable indicium of market value. *US v. One Star Class,* 546 F.3d at 28. *See e.g. Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.,* 246 F.3d 142, 151 (2d Cir.2001); *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1310 (7th Cir.1996); *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 909–10 (6th Cir.1991); *Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987); *Bebchick v. Wash. Metro. Area Transit Comm'n,* 256 U.S.App.D.C. 296, 805 F.2d 396, 404 (D.C.Cir.1986). This proposition in effect allows the court to use counsel's standard rate, or the prevailing market rate in the forum, **or a reasonable rate in between.** *US v. One Star Class,* 546 F.3d at 28 (emphasis ours). Accordingly, in sculpting the reasonable hourly rate, this Court will take into account the prevailing rate for comparably qualified attorneys in the area of San Juan, Puerto Rico, as well as in the area of Boston, Massachusetts.

The litigation at hand involved many civil rights issues, more complicated than the mile run of political discrimination cases. It also involved unusual claims, such as invasion of privacy, defamation, retaliation for the filing of a lawsuit, and violation of equal protection under a class of one theory. Additionally, the legal defenses were numerous and obscure, including Younger abstention, Burford abstention, absolute immunity, the Rooker–Feldman doctrine, and qualified immunity based on a statute not previously held unconstitutional. As for discovery, the case involved depositions of 23 witnesses, some for multiple days, and thousands of pages of documents. The trial involved expert testimony by accountants regarding Lone Stars damages, and required an understanding of the business of insurance in Puerto Rico and the statutes regulating it. In short, in addition to being a civil rights case, this case has some of the qualities of business litigation. In enacting 42 U.S.C. § 1988, Congress intended not only to "attract competent counsel" to take on civil rights cases, but "that the amount ... [would] be governed by the

same standards which prevail in other types of equally complex federal litigation such as antitrust cases." *King v. Greenblatt*, 560 F.2d 1024, 1026 (1st Cir.1977). The Court will take in consideration all these factors in assessing appropriate hourly rates.

After reviewing the relevant records submitted by Plaintiffs' attorneys, this Court finds that, all of the fee applicants' hourly rates, including local counsels', are above the prevailing rates in the local community. Nevertheless, these rates are at the same and/or below what is typically charged by attorneys with the same skills, experience and prominence in Boston. Accordingly, the Court will determine the proper/reasonable hourly rate to be applied to the work performed by each attorney and will adjust them in turn.

### 1. Out–of–State Counsel

 Lead counsel for Plaintiffs, Attorney Joseph Steinfield, was hired in the Fall of 2003 to represent Plaintiffs in the above-captioned claim. At the commencement of this litigation Mr. Steinfield's hourly rate was $425. By 2007, his rate had creeped up to $475. "A party seeking attorneys' fees is required to present evidence other than the attorney's own affidavits regarding the prevailing hourly rate." *Libertad*, 134 F.Supp.2d at 231 (*citing Bordanaro v. McLeod*, 871 F.2d 1151, 1168 (1st Cir.1989)). In compliance with this principle, Mr. Steinfield provided his own as well as other attorneys' sworn statements in support of his and co-counsel's application. According to the sworn statement of Attorney Ruben Nigaglioni submitted by Mr. Steinfield, the latter would command an hourly rate of $350.00 in Puerto Rico in light of his educational background and professional experience. Attorney Steinfield obtained his under-

graduate degree from Brown University in 1961, and in 1964 he graduated from Harvard Law School. Therefore, by the time the jury trial came to fruition, he had over forty (40) years of experience. At present, Mr. Steinfield is a partner at the Boston firm of Prince & Lobel.

In the case at bar, Plaintiffs submitted a uncontested sworn affidavit from Ruben Nigaglioni, respected member of the Puerto Rico bar, attesting that based on his familiarity with the skills, background and reputation of Attorney Steinfield, he could command a rates of $350.00[4] per hour in Puerto Rico. Plaintiffs also submitted affidavits of three Boston practitioners stating that Attorney Steinfield's rate is at or below what is typically charged by attorneys of his experience and prominence in Boston. *See* Docket No. 457, Exhibits J, K & L. As the First Circuit has held, "each case is unique and rates inflate over time," thus making rigid adherence to past awards inadvisable. *Martinez–Velez v. Rey–Hernandez*, 506 F.3d 32, 47 (1st Cir. 2007).

Having personally observed Mr. Steinfield in action, we believe his skills are first-rate. Further, we find that the hourly rate of $350.00 suggested by Atty. Nigaglioni's suggested rate of $350.00 per hour is reasonable, particularly when compared to the hourly rates allowed in recent cases in this district. The highest hourly rate allowed by this Court in a political discrimination case pursuant to 42 U.S.C. § 1983 was $275.00 for out-of-court work and $300.00 for in-court work for attorneys Eliezer Aldarondo Ortiz and Pablo Landrau Pirazi. *See Reyes Cañada v. Rey Hernandez*, 411 F.Supp.2d 53, 56 (D.P.R. 2006). The First Circuit upheld these rates on appeal. *Martinez–Velez v. Rey–Hernandez*, 506 F.3d 32, 47 (1st Cir.2007).

---

4. In making his recommendation, Mr. Nigaglioni didn't specify whether this rate should be awarded to time spent in-court or out-of-court.

Notably, both of these attorneys were admitted to the bar in 1977. *See* Civil Case No. 01–1542, Docket No. 892, Exhibits B and C. Joseph Steinfield, by comparison, was admitted to the bar in 1964, and has been practicing law continuously since 1965. *See* Docket No. 458 at 2. The *Reyes Cañada* case, moreover, began in the year 2001 and the award was made in February 2006, whereas this case began in 2003 and has continued well into 2008. Thus, taking account of both the thirteen year experience differential and inflation, the award in *Reyes Cañada* amply supports a rate for Attorney Steinfield of $330 per hour for out-of-court work, and $350 for time spent in court.

Likewise, in another political discrimination case pursuant to 42 U.S.C. § 1983, this District Court allowed an award of $265.00 for out-of-court work and $285.00 for in-court work. *See Sueiro Vazquez v. Torregrosa de la Rosa,* 534 F.Supp.2d 261 (D.P.R.2008). In *Sueiro Vazquez,* Attorney John F. Nevares was awarded $265 for out-of-court work and $285 for in-court work. As his submission to the court demonstrates, Mr. Nevares graduated from law school in 1980, and began practicing in 1981, thus giving him a full sixteen (16) years less experience at the bar than Mr. Steinfield. *See* Civil Case No. 02–2674, Docket No. 206, Ex. 3. Thus, taking account of the sixteen years of experience differential, the award in *Sueiro Vazquez,* also supports a rate for Attorney Steinfield of $330 per hour for out-of-court work, and $350 per hour in-court-work.

In *Libertad v. Sanchez,* 134 F.Supp.2d 218 (D.P.R.2001), the district court awarded Attorney Judith Berkan an in-court rate of $215 for work done in the years 1992 to 1994, $250 for the years 1995 to 1997, and $255 in 1998. *Id.* at 233. In making this determination, the court relied on the principle espoused in *Feliciano v. Colon,* 697 F.Supp. 51, 58 (D.P.R.1988),

that it is appropriate to award a $10/hour rate increase for every two additional years of experience for a seasoned attorney. Thus, following this principle, the same court today, ten years later, would award Ms. Berkan at least a $50 rate increase to $305 per hour. Since Ms. Berkan was not admitted to the bar until 1978, *see Limpieza Ciudadana v. Gracia–Morales,* 359 F.Supp.2d 38, 45 (D.P.R.2005), that gives Mr. Steinfield fourteen additional years of experience, which should factor into the applicable rate. Under the *Libertad* and *Feliciano* analysis, Mr. Steinfield's in-court rate would easily reach $350 per hour.

In light of the proceeding discussion, absent affidavits contradicting these aforementioned affidavits and taking into account Mr. Steinfield's level of skill, experience and success in this litigation, this Court will set his hourly rate at $330 for out-of-court work and $350 for in-court work.

■ Attorney Jeffrey Pyle's billing rate started out at $195 an hour in 2003 and gradually increased to $225 by 2007. Mr. Pyle obtained his undergraduate degree from Trinity College in 1997 and his law degree from Boston College in 2000. Upon graduation, Mr. Pyle served as law clerk for Hon. Michael A. Ponsor at the United States District Court for the District of Massachusetts. At present, he is a senior associate at Prince & Lobel. Plaintiffs submitted a uncontested sworn affidavit from Andrés W. López ("López"), respected member of the Puerto Rico bar, attesting that based on his familiarity with the skills, background and reputation of attorney Pyle, the Court could award an hourly rate of $225 per hour for work performed in this litigation.

In *Reyes Cañada* the court awarded rates of $170/$190 for Attorney Iván Castro Ortz, who began practicing law in Jan-

uary 1998. *Reyes Cañada,* 411 F.Supp.2d at 56. Like Pyle in this case, Castro had been practicing law for approximately three years at the time suit was brought, yet he received a markedly higher rate than the rate suggested by Defendants for Pyles' time. *See* Civil Case No. 01–1542, Docket No. 892, Ex. E. Absent affidavits contradicting Lopez, given the fact that "rates inflate over time," *Martinez–Velez,* 506 F.3d at 47, and based on the Court's knowledge of the hourly rates of attorneys in San Juan, Puerto Rico with similar experience as Mr. Pyle, this Court will set his hourly rate at $215 for out-of-court time and $225 for in-court time.

In addition, Plaintiffs request compensation for the work performed by law clerks and attorneys at Prince & Lobel, other than Joseph Steinfield and Jeffrey Pyle. In their opposition, Defendants object to these rates arguing that Plaintiffs failed to provide any information regarding these individuals qualifications, and thus, this Court is unable to determine the reasonableness of Plaintiffs' request. However, a review of the record shows that Plaintiffs did submit the resumes of Attorney Paige Scott–Reed ("Scott–Reed") and of one of the law clerks, Daniel R. Visalli ("Visalli"). *See* Dockets No. 560 & 561. These resumes demonstrate the qualifications of these timekeepers, who worked a total of 42.90 and 241 84 hours, respectively. *See* Docket No, 458, Ex. G.

Attorney Scott–Reed graduated from Harvard and Radcliffe Colleges in 1992 and from Harvard School of Law in 1997. Upon graduation, she served as a law clerk for Hon. Dolores K. Sloviter, former Chief Judge of the United States Court of Appeals for the Third Circuit. She is now a senior associate at Prince & Lobel. Attorney Scott–Reed has request-

ed that her hourly rate be set at $225. However, we find it is too high considering she had only six years of experience at the start of this litigation. Accordingly, we will set her rate at $200 per hour for in-court time and $185 per hour for out-of-court time. On the other hand, at the time Visalli performed work in this litigation he was a law student at Northeastern University School of Law, candidate for a Juris Doctor in May 2004. Plaintiffs request that an hourly rate of $195 for Visalli. However, we find it is too high considering that at the time he was a law student performing work as a law clerk, with no experience as an attorney. In our discretion we will set a rate for him at $85 per hour for in-court time and $75 per hour for out-of-court time.

As to the other attorneys and law clerks at Prince & Lobel,[5] a review of the record shows that Plaintiffs failed to provide any information regarding these individuals qualifications, and thus, this Court is unable to determine the reasonableness of their request. "To inform and assist the court in the exercise of its discretion, the burden is *on* the fee applicant to produce satisfactory evidence … that the requested rates are in line with those of prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. 1541. "[T]he reasonableness of hourly charges depends on prevailing rates in the community for comparably qualified attorneys." *Ackerley Communications of Massachusetts, Inc. v. City of Somerville,* 901 F.2d 170, 172 (1st Cir.1990) (internal citations omitted). Plaintiffs have failed to provide record support for the requested hourly rates for Attorney Calawa and the

5. Specifically Plaintiffs also seek fees for attorney Michael Calawa and lawclerks Nina Y. Cortiella, Joseph P. Calandrelli, Anne K. Grant, Siddhartha Mukherjee, Regina Gerrick and Gregory Klotz.

aforementioned law clerks. Because we are unable to establish a comparable local rate for these individuals, this Court will not allow their fees.

▬▬▬ Plaintiffs also seek reimbursement for paralegal work. "Attorneys' fees for a prevailing party also include the work of paralegals." *Santiago v. Mercado*, 175 F.Supp.2d 164, 172 (D.P.R.2001); *see also Figueroa–Torres v. Toledo–Davila*, 232 F.3d 270, 277 (1st Cir.2000). Plaintiffs request hourly rates ranging between $110 to $125. In their opposition, Defendants argue that the paralegals' hourly rate is excessive and request its reduction to $50.00. *See* Docket No. 486 at page 21. The Court agrees. Based on this Court's past holdings, we will reduce the paralegal's rate to $50.00 per hour. *See Torres–Rivera v. Espada–Cruz*, Civil No. 99–1972(CCC), 2007 WL 906176 (D.P.R. March 22, 2007) (setting paralegal rate at $50.00); *Zayas v. Puerto Rico*, 451 F.Supp.2d 310 (D.P.R.2006) (hourly rate for paralegal set at $50.00); *Santiago*, 175 F.Supp.2d 164 (D.P.R.2001) (reducing requested hourly rate of paralegals from $75 to $40).

### 2. Local Counsel

▬▬ The three local counsel hired by Plaintiffs—Joan S. Peters, Andres Guille-mard–Noble and Monique Guillemard–Noble[6]—are members of the San Juan law firm of Nachman & Guillemard ("N & G").[7] Attorney Peters graduated from Wellesley College in 1983 and from Georgetown Law School in 1986. Upon graduation, Attorney Peters served as a law clerk for Hon. Juan R. Torruella at the United States Court of Appeals for the First Circuit. Joan Schlump Peters submitted an affidavit stating that her usual hourly rate is $250, along with an order from the Bankruptcy Court for the District of Puerto Rico approving this rate. *See* Docket No. 457, Ex E. Ms. Peters presented an extensive list of civil rights and constitutional law cases in which she was involved over the past 22 years. *Id.* at Ex. D.

Furthermore, in *Limpieza Ciudadana v. Gracia–Morales*, 359 F.Supp.2d 38, 45 (D.P.R.2005), a civil rights case initiated in 2002, the district court awarded Attorney Ortiz Velez, with 19 years of experience, his requested in-court rate of $250, and an out-of-court rate of $200. *Id.* Likewise, in *Reyes Cañada*, 411 F.Supp.2d at 56, the Court also granted Attorney Claudio Aliff, with 17 years of experience, his requested rate of $220 in for in-court and $200 for out-of-court. Accounting for Ms. Peters additional years of experience, *see Felici-*

---

6. In their opposition, Defendants objected to the hours charged by Attorneys Andres Guillemard–Noble and Monique Guillemard–Noble because they are the son and daughter of the individual plaintiffs, and according to Defendants, they were essentially the client. Defendants cite no case law on this matter, and they do not argue that these Attorneys did not *actually* perform the work detailed in their records. Accordingly, the Court denies Defendants' request.

Notwithstanding, Defendants request that this Court reduce the hours spent by Attorneys Andres and Monique Guillemard–Noble preparing their father to testify for trial. The Court will grant their request but on different grounds: that the hours charged by these Attorneys are duplicative inasmuch as Attorneys Steinfield and Pyle billed for the same task. Surely, Plaintiff Guillemard did not need four different Attorneys preparing him simultaneously. Accordingly, the Court will reduce 4.5 hours from Plaintiffs' son and daughter's timesheets.

7. The Court notes that although Attorney Schlump–Peters is a senior associate at a local law firm, she informed the Court in her declaration that throughout the course of this litigation she was a resident of Miami, Florida, and thus, traveled back and forth to attend hearings and depositions and prepare for trial in Puerto Rico.

*ano,* 697 F.Supp. at 58, factoring in inflation, and considering her educational background, we set her a reasonable hourly rate of $250 for in-court-work and $235 for out-of court-work.

■ Attorney Andres Guillemard–Noble graduated from University of Hartford in 1987 and from the Interamerican University School of Law in 1990. Upon graduation, he served as a law clerk for the undersigned for the course of one year, and thereafter, for Hon. Hector M. Laffitte at the United States District Court for the District of Puerto Rico. He is now a senior partner at N & G. Attorney Andres Guillemard has also requested that his rate be set at $250. However, we find it is too high considering he only had thirteen years of experience at the time this case was filed. Accordingly, we will set his rate at $200 per hour for in-court time and $175 per hour for out-of-court time.

■ Attorney Monique Guillemard–Noble graduated from University of Pennsylvania in 1995 and from the Interamerican University School of Law in 1998. Upon graduation, she served as a law clerk for Hon. Hector M. Laffitte at the United States District Court for the District of Puerto Rico. She is now a junior partner at N & G. Attorney Monique Guillemard has requested that her hourly rate be set at $200. Notwithstanding, we find it is too high considering she had only five years of experience at the start of this litigation. Accordingly, we will set her rate at $175 per hour for in-court time and $155 per hour for out-of-court time.

## B. Time Sheets

"The second part of the Lodestar calculation involves the number of hours for which the Attorneys seek compensation." *Bonilla v. Trebol Motors Corp.,* 1997 WL 178861 at *24 (D.P.R. March 27, 1997). The district court ... should exclude from this initial fee calculation hours

that were not "reasonably expended." ... Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. ... Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

### 1. Vagueness

■ "In order to recover fees, attorneys must submit a full and precise accounting of their time, including specific information about number of hours, dates, and the nature of the work performed." *Deary v. City of Gloucester,* 9 F.3d 191, 197–198 (1st Cir.1993)(internal citation omitted). The problem with entries containing only "gauzy generalities" is that "they fail to allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Lipsett,* 975 F.2d at 938 (internal citations and quotation marks omitted). First Circuit Court case law "make[s] clear that prevailing parties who intend to seek counsel fee awards ordinarily must ensure that contemporaneous time records are kept in reasonable detail.... [First Circuit Court] precedents warn that failure to do so may have deleterious consequences (such as the slashing or disallowance of an award)." *Gay Officers Action League,* 247 F.3d at 297 (*citing Lipsett,* 975 F.2d at 938; *Grendel's Den,* 749 F.2d at 952).

In their response to the request for Attorney fees now before the Court, Defendants contend that Plaintiffs' attorneys did not produce contemporaneous time records in support of their fee request and

that the time records provided were not kept in sufficient detail. *See* Docket No. 486 at page 2. However, having the Court reviewed the time records provided by Plaintiffs and Defendants' objections to the same, we find that, for the most part, the submissions "adequately limn the different tasks performed, the nature of the work, the time consumed, and the dates when effort was expended." *Lipsett*, 975 F.2d at 938. With the exception of 4.1 hours billed by Attorneys Steinfield and 7.3 hours of Attorneys Pyle's time, where there was no description whatsoever of the task performed, there will be no other reductions made for the form of Plaintiffs' attorneys' entries.

## 2. Overstaffing and Duplicative, Unproductive or Excessive Hours

In their motion for Attorney fees, Plaintiffs argue that the time and effort dedicated to this case, although substantial, was necessary given the complexity of the issues and Defendants' aggressive litigation strategy. *See* Docket No. 461 at page 3. Plaintiffs contend that a considerable portion of the time billed was spent opposing Defendants' two interlocutory appeals, motions to dismiss, and motions to stay, as well as seeking to compel the production of documents or testimony. *See* Docket No. 461 at page 12–13. On the other hand. Defendants oppose Plaintiffs' request for Attorney fees arguing that Plaintiffs' case was overstaffed and that the prevailing parties' Attorneys are charging for hours spent on work that was duplicative or excessive.[8] *See* Docket No. 486. In their reply, Plaintiffs' Attorneys contend that there was no such overstaffing inasmuch as depositions were attended by only one Attorney and all other tasks were divided up among the team members efficiently

and effectively throughout the litigation. *See* Docket No. 484 at page 3. Let's see.

As pointed out by the Defendants, it is well-established that awards under Section 1988 "are not intended to serve as full employment or continuing education programs for lawyers and paralegals," *Gay Officers Action League*, 247 F.3d at 297 (internal citations omitted). "As a general matter, the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted. ... A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Lipsett*, 975 F.2d at 938 (internal citations omitted). Therefore, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Id.*

Notwithstanding, "[t]ime spent by two Attorneys on the same general task is not, however, per se duplicative." *Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir.1998). "Given the complexity of modern litigation, the deployment of multiple Attorneys is sometimes an eminently reasonable tactic. ... Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several Attorneys are working on a single issue." *Gay Officers Action League*, 247 F.3d at 297 (internal citations omitted). In this analysis, "staffing issues are often best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncracies." *Lipsett*, 975 F.2d at 939.

In determining the reasonableness of the prevailing party's request, this Court finds that "[w]hether time billed by Plaintiff is excessive or unproductive must

---

8. The Defendants object to the amount of Attorneys and law clerks from Prince & Lobel, other than Mr. Steinfield and Mr. Pyle, that worked on this case. Because we have already discounted their hours based on different grounds, the Court will not discuss this contention herein.

be determined in light of how aggressively the Defense has argued its case." *Quint v. A.E. Staley Mfg. Co.*, 245 F.Supp.2d 162, 179 (D.Me.2003) (internal citations omitted). It is an important factor to consider whether Defendants employed "Stalingrad defense" tactics, resisting Plaintiffs at every turn and forcing them to win their hard-earned victory from rock to rock and from tree to tree. *See Lipsett*, 975 F.2d at 939. "Careful preparation often requires collaboration and rehearsal. ... [B]ecause a litigant's staffing needs and preparation time will often vary in direct proportion to the ferocity of [its'] adversaries' handling of the case, this factor weighs heavily in the balance." *Rodriguez–Hernandez*, 132 F.3d at 860 (*citing Lipsett*, 975 F.2d at 939).

In this case, the record reveals that the defense was indeed extreme. We need not restate the procedural background of this case. The docket report speaks for itself. During the course of this litigation, defendants filed motion after motion, delaying the progress of this litigation and, on occasions, rehashing arguments in motions that had already been rejected by the Court.

On the eve of trial, Defendants filed a motion to bifurcate pursuant to Rule 42 of the Federal Rules of Civil Procedure (Docket No. 359), flooded the case's docket with motions **in limine** (Dockets No. 364, 365, 366, 368, 369), entered a motion for "simplification" of issues under FED. R.CIV.P. 16(c) (Docket No. 372), a motion for judicial notice (Docket No. 373), and a motion for reconsideration of this Court's order granting Plaintiffs' one motion in limine (Docket No. 384). Thereafter, at the end of Plaintiffs' case-in-chief, Defendants filed a 33–page Rule 50 motion (Docket No. 415), which was taken under advisement, *see* Docket No. 427. At the close of their turn to present evidence, Defendants then filed a renewed 44–page motion to dismiss under Rule 50 (Docket No. 433), Most of these motions were without merit, and were thus denied.

Even after losing at trial, Defendants' vigorous resistance continued. After judgment was entered, Defendants then filed a 104–page motion pursuant to Rule 50(b) and/or Rule 59 (Docket No. 446). In addition, following the entry of a permanent injunction in favor of Plaintiffs, Defendants filed a motion for relief of judgment and permanent injunction pursuant to FED. R.CIV.P. 60(b) (Docket No. 530). The Defendants were simply implacable adversaries.

■■■ Although the undersigned presided this case almost three (3) years after its inception, *see* Docket No. 331, it was enough time for the undersigned to be able to qualify this case as "bitterly contested." *See Lipsett*, 975 F.2d at 939. As pointed out by Plaintiffs in their motion for Attorney fees, Defendants here undoubtedly mounted a Stalingrad-type defense, employing five lawyers (Attorneys Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Courtney R. Carroll, Ivette M. Berrios and Luis A. Rodriguez–Muñoz) and battling Plaintiffs at every turn.[9] *See Torres–Rivera v. O'Neill–Cancel*, 524 F.3d 331, 338 (1st Cir.2008).

Given the aggressive nature of the defense and considering the time, effort, and energy involved in litigating against defendants, we find that the effective preparation and presentation of this case required a team at least as big as the defense's. "After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the [defendant] to castigate the plaintiffs for putting too many troops into the field." *Gay Officers*

---

9. The Court notes that, if we were to follow Defendants' logic, we would necessarily find that they too overstaffed their case since five (5) different Attorneys appeared on their behalf.

*Action League,* 247 F.3d at 298. Accordingly, the Court will consider and scrutinize the hours billed by all five (5) Attorneys whose hourly rates were set *infra.* We also find that extensive hours spent on preparation were warranted. In light of these circumstances, Plaintiffs' Attorneys time records will be reviewed favorably towards the plaintiffs, making adjustments only when the Court deems it appropriate. We shall now discuss Defendants' objections to Plaintiffs' Attorneys' time entries.

■ The Defendants first challenge the time spent in connection with drafting the complaint and the amended complaints. *See* Docket No. 486 at page 6. Of the 1977.3 total hours charged by Attorney Steinfield, 68.1 were dedicated to the drafting of the initial and amended complaints, whereas of the 1603.5 total hours billed by Attorney Pyle, 51 were dedicated to the preparation of the same. *See* Docket No. 458, Exhibits D, G. That is, a total of 119.1 man hours were spent on preparing these pleadings—the equivalent to 3–weeks worth of full-time commitment to the task by one Attorney. We agree with Defendants that this task took an excessive amount of time. Therefore, we will deduct 20 hours from Mr. Steinfield's total tally and 10 hours from Mr. Pyle's.

The Defendants also complain about the excessive amount of time spent on the various oppositions to motions. *See* Docket No. 486 at page 6. Having determined that Defendants in this case mounted a Stalingrad-type defense, this Court will not reward Defendants by reducing the amount of hours spent by Plaintiffs' Attorneys opposing Defendants' own numerous, and at times repetitive, motions. *Rodriguez–Hernandez,* 132 F.3d at 860 (*citing Lipsett,* 975 F.2d at 939) ("[A] court should not reward Defendants for their vehement 'Stalingrad defense,'. . . ."). "The government cannot litigate tenaciously and then

be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera,* 477 U.S. 561, 581 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (citation and internal quotation marks omitted). Therefore, no reductions will be made for excessiveness in opposing Defendants' motions.

■ The Defendants also challenge the amount of time Plaintiffs' Attorneys spent in phone conferences between or among themselves. *See* Docket No. 486 at pages 7–8. The Defendants also point out that, on most occasions, Plaintiffs' Attorneys fail to specify the topic of their phone conversations. After an assiduous review of the time entries submitted by Plaintiffs' legal team, the Court notes that Plaintiffs' Attorneys spent a considerable amount of time on the phone and in meetings with each other. As asserted by Defendants, most of the entries did not describe the topic of the conversation or the meeting, and when they did, they often involved instances of an Attorney updating another member of the legal team of a particular development in the case. The Court finds that duplicity may have resulted from these numerous conferences, and thus, will reduce by 20 percent (20%) all non-court time when counsel acted together. *See Ciudadana,* 359 F.Supp.2d 38 (D.P.R.2005) (holding that twenty percent downward deviation from lodestar amount was warranted in calculating Attorney fee award for prevailing plaintiffs in § 1983 First Amendment class action, for time spent by Attorneys acting together, including strategy conferences; three Attorneys worked on case and some duplicity, pooling and overstaffing may have resulted). Accordingly, the Court will reduce 52.96, 49.32, 95.98, 24.9, and 22.6 hours from Mr. Steinfield, Mr. Pyle, Ms. Schlump–Peters, Mr. Guillemard–Noble and Ms. Guillemard–Noble's out-of-court time, respectively.[10]

10. After a careful review of the records submitted, the Court estimates that Mr. Steinfield

Attorneys Andres and Monique Guillemard–Noble also seek to recover time spent interacting via letter with the media, namely, EL NUEVO DIA, a local newspaper. The Defendants oppose this charge and we agree. "Reported federal cases are unanimous in denying awards of Attorneys' fees for media-related time to individual civil rights plaintiffs." *McLaughlin by McLaughlin v. Boston School Committee,* 976 F.Supp. 53, 72 (D.Mass.1997) (*citing Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 176 (4th Cir.1994); *Knight v. Alabama,* 824 F.Supp. 1022, 1034 (N.D.Ala.1993)). *See also Parker v. Town of Swansea,* 310 F.Supp.2d 376, 393 (D.Mass.2004). Accordingly, we will reduce 2.5 hours from Atty. Monique Guillemard–Noble's out-of-court time, as well as 0.5 hours from Atty. Andres Guillemard–Noble's billed time.

The Defendants also object to the hours spent; by Attorney Steinfield working on his fee agreement and the engagement letter with his clients, Plaintiffs. "A fundamental principle underlying judicial review of fee applications is that time spent on tasks not necessary to the presentation of this case should be deducted." *Parker,* 310 F.Supp.2d at 393 (internal citations and quotation marks omitted). Because these hours did not contribute to the progress of this litigation, 2.7 hours will be deducted from Attorney Steinfield's out-of-court time.

The Defendants also protest the amount of time spent on the Attorney fee application. According to Plaintiffs' motion for Attorney fees, their legal team spent 191 hours working on this fee application: Mr. Steinfield (16.6 hrs.), Mr. Pyle (21.7 hrs.) and the paralegals (152.9 hrs.). *See* Docket No. 458, Exhibit D. The Court recognizes that this case lasted almost four years, and thus, the documents comprising the fee application are extensive. However, the Court agrees with Defendants that the time billed is excessive, but only as to the time spent by the paralegals putting together the documents now before the Court. Therefore, the Court will reduce by half the time billed by the paralegals, and thus deduce approximately 75 hours of their time.

The Defendants also raise objections to the hours billed by a paralegal for attending the pretrial conference and the jury trial. The Court agrees. The paralegal's mere presence during these proceedings was unnecessary, and thus, 49.8 hours in paralegal time will be deducted. By the same token, the Court also finds that the attendance of more than one or two attorneys to some of the hearings that took place during the course of this litigation was unnecessary and may have resulted in overstaffing. For example, the Court finds that Attorney Schlump–Peters and Attorney Andres Guillemard–Noble's attendance to the Preliminary Injunction Hearing that took place on January 20, 2004 was unnecessary inasmuch as the lead Attorney in this case, Mr. Steinfield, was also present. Consequently, this Court will deduct the 9.5 hours billed by each Attorney. We also find that Atty. Schlump–Peters and Atty. Andres Guillemard–Noble's travel and attendance to the March 9, 2007 oral argument before the

and Mr. Pyle charged approximately 144.70 and 123.30 hours, respectively, in phone conferences and team meetings. Ms. Schlump–Peters and Mr. and Ms. Guillemard–Noble's time entries were somewhat more difficult to dissect inasmuch as their time sheets contained block billing entries. Therefore, the Court made its own calculated guesses and concluded that Ms. Schlump–Peters spent 239.95 hours in phone conferences and meetings, whereas Ms. and Mr. Guillemard–Noble spent 56.50 and 62.25 hours, respectively. Attorney Schlump–Peters hours are considerably higher than Attorney Steinfield's because she charges at 0.25 hr. increments whereas Mr. Steinfield charges at 0.10 hr. increments.

First Circuit Court of Appeals was uncalled for because Mr. Steinfield and Mr. Pyle also traveled and attended the hearing in representation of Plaintiffs. We find excessive the hours charged by four Attorneys in attending a hearing where only one attorney will be called to speak on a party's behalf. Therefore, the time billed by Atty. Schlump–Peters and Atty. Andres Guillemard–Noble will be deducted.

Finally, Defendants also oppose the hours spent by attorneys in tasks that were clerical in nature. *See* Docket No. 486 at pages 15–16. For example, a review of the itemized time sheets submitted for the work perform by Attorney Scott–Reed shows that a number of the items appear excessive as they are clerical in nature. Accordingly, the Court reduces the time claimed by Attorney Scott–Reed by 14 out-of-court hours. The Court has also has identified some of these clerical entries and deducted 19.5 hours from Attorney Schlump–Peters and 1.9 hours from Attorney Pyle. Similarly, the Court also finds that some of the paralegals spent time on tasks that were purely clerical as well, such as packing boxes to send to Puerto Rico from Boston, making phone calls, or organizing files. In our discretion, the paralegal hours will be pruned by fifteen percent (15%). *See Lipsett,* 975 F.2d at 939–940 (holding that lower court has discretion to reduce paralegal fees when tasks performed by paralegals, such as filing motions and translating depositions, fell into "gray area" between purely clerical tasks and those properly entrusted to paralegals). Finally, we note that some of the tasks performed by law clerk Visalli were excessive and clerical in nature, thus, we reduce the time claimed by him by 39.00 hours.

### 3. Travel Time

■ The Defendants complain that, with regards to out-of-state counsel, the travel time to and from Puerto Rico and the time it took to make such travel arrangements should not be recoverable. *See* Docket No. 486 at page 11. According to Defendants, this time is the result of Plaintiffs' decision to hire out-of-town Attorneys, and this expense should run on their tab. *Id.* In response, Plaintiffs contend that they should be reimbursed for the time spent by their Attorneys on travel inasmuch as they are not requesting compensation for travel time where the Attorney was not also working. *See* Docket No. 484 at page 4. In the alternative, they suggest that a reduction, if any, should be taken from the hourly rate, not the amount of time billed. *Id.* On this issue, we agree with Defendants.

In their reply, Plaintiffs cite the First Circuit Court of Appeals in *Maceira v. Pagan,* 698 F.2d 38 (1st Cir.1983) in support of their contention that the hourly rate, as opposed to the time billed, should be reduced when the Attorney for a prevailing party is traveling. In *Maceira,* the defendant appealed the District Court for the District of Puerto Rico's award of Attorney fees to plaintiffs' lawyers claiming the award was too high. The First Circuit first held that $100 per hour, the Attorney's ordinary Detroit rate, was not excessive under the lodestar method despite the fact that he was called to work in Puerto Rico where ordinary rates were lower. The Court concluded that the issues at stake in the litigation were complex, that the hired Attorney had a specialty in that area, and that there was no evidence that lawyers with the same degree of experience and specialization were available in Puerto Rico. The Court then held that where both parties' theory was that the Attorney should be compensated for travel time at one-half his regular rate, "in the context of this case and these arguments," the Court would allow $50 per hour as reasonable compensation for travel time,

as opposed to half of the prevailing rate in the community. *See Maceira,* 698 F.2d at 40. In the instant action, we are of the opinion that hiring out-of-town counsel was unnecessary because, as opposed to the circumstances in *Maceira,* local counsel with the required degree of experience and specialization were available to Plaintiffs. Therefore, we find that it is unreasonable to bill Defendants for the extraordinary travel time between San Juan and Boston and San Juan and Miami incurred by Attorneys Steinfield, Pyle and Schlump–Peters. This expense arose from Plaintiffs' decision to hire Attorneys from so far away and Plaintiffs "[have] not offered any 'articulable reason for imposing on a local opponent the extra expenses associated with retaining foreign counsel.'" *Parker,* 310 F.Supp.2d at 395 (*citing Ackerley Comm. of Mass., Inc. v. City of Somerville,* 901 F.2d 170, 171 n. 3 (1st Cir.1990); *Guckenberger v. Boston Univ.,* 8 F.Supp.2d 91, 106 (D.Mass.1998) (travel time deducted where, inter alia, retention of California counsel was not essential but rather a "judgment call by the plaintiffs")). *See also Torres–Rivera v. Espada–Cruz,* No. CIV. 99–1972, 2006 WL 2136640 at *3 (D.P.R. July 27, 2006). *See also Parker,* 310 F.Supp.2d at 395 (reducing travel time incurred by plaintiff's Attorney inasmuch as plaintiff's decision to opt for out-of-state Attorney was made at his own expense).

In accordance with the foregoing this Court will deduce all time spent for travel or preparation for travel billed by Mr. Steinfield, Mr. Pyle and Ms. Schlump–Peters, with the exception of the instances where travel time was productively used to prepare for a meeting, a hearing, a deposition or trial.[11]

## C. Upward or Downward Adjustments

Finally, we must consider if there is any reason to adjust the requests downward or upward. Adjustments are made only in unusual circumstances. However, a reduction for time spent on unsuccessful claims or redundant or excessive hours is appropriate. *See Hanover Housing Authority,* 113 F.3d at 1301.

### 1. Waived Claims

In their opposition to the motion for Attorney fees, Defendants argue that time spent on claims that were ultimately voluntarily waived by Plaintiffs in the Proposed Pretrial Order should not be allowed. *See* Docket No. 486 at pages 11–12. In their reply to Defendants' opposition, Plaintiffs do not dispute Defendants request for a downward adjustment on these grounds.

In the Pretrial Order filed by the parties, Plaintiffs waived their substantive due process claim and the following state-law claims: tortious interference with contractual relationships and tortious interference with prospective business relationships. *See* Docket No. 358 at pages 71–72. We find that Defendants' request for a downward adjustment in light of Plaintiffs' voluntary waiver of these claims is reasonable. However, after a thorough review of the Attorney records, we are unable to apportion the time expended on these claims. Notwithstanding the foregoing, having closely managed this case, we find that the hours Plaintiffs' must have spent on these claims must have been meager at

---

**11.** Generally, Atty. Schlump–Peters reported her travel time in block billing entries. The Court therefore has determined the time for a direct flight to the Attorney's destination (Miami) to be three (3) hours, and reduced that amount of time from the total hours billed in the block entry. *See Gratz v. Bolling-er,* 353 F.Supp.2d 929, 943 n. 5 (E.D.Mich. 2005). "While this approach does not account for travel time to and from the airport or in the airport terminal, the Court believes this to be a reasonable approach and probably the only possible approach other than reducing the time billed entirely." *Id.*

best. Therefore, the Court will shrink the out-of-court hours charged by all Attorneys by one percent (1%).

## 2. Unsuccessful Claims

The Defendants also argue that the Court should make a global reduction to the hours spent on failed claims by Plaintiffs' Attorneys. According to Defendants, Plaintiffs did not succeed on their First Amendment political discrimination claim regarding the investigation against Contreras, as well as several of their claims against Juarbe. In addition, Defendants claim that the jury did not award damages to plaintiff Lone Star on most claims, and thus, a reduction is justified. *See* Docket No. 486. On the other hand, Plaintiffs argue in their reply that, not only did they achieve excellent results, but because the lawsuit involved a common core of facts, as opposed to a series of discrete claims, a reduction is unwarranted. *See* Docket No. 484.

The results obtained by a fee applicant is an important factor that may lead a court to adjust the fee request upward or downward. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

> This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.*

 Where a plaintiffs claims for relief are based on different facts and legal theories, counsels work on an unsuccessful claim "will be unrelated to his work on another claim," and thus uncompensable. *Id.* at 435, 103 S.Ct. 1933. But where civil rights claims "involve a common core of facts or [are] based on related legal theories ... [m]uch of counsels time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435, 103 S.Ct. 1933. In such a case, where an Attorney achieves "excellent results," he should be awarded "a fully compensatory fee." *Id.* As the Court explained:

> Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. ... in good faith [Attorneys] may raise alternative grounds for a desired outcome, and the courts rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435, 103 S.Ct. 1933.

 The First Circuit has aptly summarized the Supreme Courts holding stating that "when a civil rights suit consists of multiple claims, and when the plaintiff prevails on some of them but not on others, the plaintiff is entitled to fees for hours worked not only on the successful civil rights claims, but also on other claims involving a common core of facts or related legal theories." *Aubin v. Fudala*, 782 F.2d 287, 290 (1st Cir.1986) (internal citations omitted); *see also Lipsett v. Blanco*, 975 F.2d 934, 940–41 (1st Cir.1992)(reaffirming doctrine of interrelatedness). As a general principle, *Hensley* established that where the unsuccessful claims are legally distinct from the successful claims, no fee may be awarded for services on the unsuccessful claims. *Hensley*, 461 U.S. at 434–435, 103 S.Ct. 1933. However, in cases

where the plaintiff's claims for relief involve a common core of facts or will be based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435, 103 S.Ct. 1933. Where there are legally related claims, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Id.*

▪ In the case at bar, the Court finds that all legal claims against Defendants are interrelated. All claims arose out of Defendants' singling out Plaintiffs because of their political beliefs in violation of their First Amendment rights. The Defendants' violations of plaintiffs' procedural due process, equal protection and privacy rights, as well as Defendants' defamation of Plaintiffs were equally motivated. Defendants contend that despite the interrelatedness of the claims, although Plaintiffs' success against defendant Contreras was practically absolute, it was not so against defendant Juarbe. As discussed in the background section *infra,* Plaintiffs succeeded in only three of their seven claims against Juarbe, a fifty-seven percent (57%) hit rate. However, all of these claims involved a common core of facts and were based upon related legal theories.

Accordingly, we find that Plaintiffs' degree of success was substantial and find no justification for reducing the fees based on the over all relief obtained. The degree of success obtained is not measured solely by the compensatory damages recovered at trial. Plaintiffs' obtained a judgment against Juarbe of $1,675,000.00, as well as preliminary and permanent injunctions. "The result is what matters," not whether plaintiffs prevailed on every alternative theory of relief. *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. 1933.

### 3. Supplemental State–Law Claims

Finally, Defendants argue in their opposition that this Court should not award Attorney fees for the time spent by Plaintiffs' Attorneys on the local claims. According to Defendants, the right to privacy claim regarding the bank subpoenas is only related to the First Amendment claim against Contreras regarding the investigation. The Defendants now argue that because the jury did not find Contreras responsible for violating Plaintiffs' First Amendment rights, Plaintiffs should not be awarded the Attorney fees incurred in the derivative local claim. *See* Docket No. 486 at page 10–11. In their reply, Plaintiffs counter Defendants' contention arguing that, according to First Circuit case law, the time spent on local claims is compensable if they are closely interconnected with the federal claims, even if a plaintiff prevailed solely on state grounds. *See* Docket No. 484 at 2.

In *Figueroa–Torres v. Toledo–Davila,* 232 F.3d 270 (1st Cir.2000), the First Circuit Court of Appeals stated that "when state-law and § 1983 claims are inextricably intertwined, a plaintiff who prevails only on the state-law claim nonetheless may receive a fee award under 42 U.S.C. § 1983." *Figueroa–Torres,* 232 F.3d at 277 (*citing Williams v. Hanover Housing Auth.,* 113 F.3d 1294, 1298–99 (1st Cir. 1997) (holding that if a plaintiff in such circumstances succeeds in the primary objective of his law suit, he nay receive Attorney fees even if he prevails only on a state-law claim)). It follows then that even if Plaintiffs' political discrimination claim regarding the investigation failed, the Plaintiffs are still entitled to their Attorney fees related to its successful local claim. In accordance with the foregoing, no reductions shall be made on these grounds.

## D. Allocation of Attorney Fees between Defendants

We must now determine the amount of Attorney fees each defendant is responsible for. In light of the fact that the damages were assessed against each defendant individually and that it would be an impossible task for this Court to determine how many hours were expended litigating against each, the Court will utilize the "relative liability" method as a means of effectuating the apportionment. The Court will thus compare the damages assessed against each defendant to apportion the awarded Attorneys' fees. *See Torres–Rivera v. O'Neill–Cancel*, 524 F.3d 331, 338 (1st Cir.2008). In accordance with this method, the Court will apportion responsibility for payment of the fees sixty-five percent (65%) to Contreras and thirty-five percent (35%) to Juarbe.

The following are tables depicting all of the deductions and adjustments discussed above, as well as the computation of the total legal fees to be awarded to Plaintiffs.

| | JS | JP | JSP | AGN | MGN | PSR | Visalli | Paralegal | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Total Hours Charged | 1,977.30 | 1,603.50 | 2,121.25 | 144.75 | 197.75 | 42.90 | 241.00 | 1,209.00 | 7,537.45 |
| In-Court | 204.90 | 130.10 | 147.40 | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 483.40 |
| Out-of-Court | 1,772.40 | 1,473.40 | 1,973.85 | 144.75 | 196.75 | 42.90 | 241.00 | 1,209.00 | 7,054.05 |
| **Deductions:** | | | | | | | | | |
| Complaint (excessive) | (20.00) | (10.00) | | | | | | | |
| Inv.118302, 9/27/2004 (no description) | (3.50) | | | | | | | | |
| Inv. 119400, 10/24/2004 (no description) | (0.20) | | | | | | | | |
| Inv. 131732, 10/14,19/2005 (no description) | (0.40) | (0.30) | | | | | | | |
| Inv. 140073, 6/20/2006 (miscalculation) | (0.20) | | | | | | | | |
| Inv. 149343, 3/07/2007 (no description) | | (7.00) | | | | | | | |
| Inv. 152622, 6/14/2007 (no description) | (0.50) | | | | | | | | |
| Attend Prelim Inj Hearing (duplicative) | | | (9.50) | (9.50) | | | | | |
| Translate, July – Sept 04 (clerical) | | | (18.50) | | | | | | |
| Organize Files, 10/11/2004 (clerical) | | | (1.00) | | | | | | |
| Inv. 126479, 5/3/2005 – (Duplicative attendance to oral argument) | | | (2.60) | | | | | | |
| Travel, prep and attendance to 3/9/2007 oral argument (duplicative) | | | (20.00) | (4.00) | | | | | |
| Media charges, 3/1/2004 (unproductive) | | | | (0.50) | (2.50) | | | | |
| Engagement charges (unproductive) | (2.70) | | | | | | | | |
| Inv. 153326, 7/31/2007 (clerical) | | (1.90) | | | | (14.00) | (39.00) | | |
| Tel. conferences & meetings (duplicative) | (26.48) | (22.08) | (37.43) | (12.45) | (11.30) | | | | |
| Attend Trial (unnecessary) | | | | | | | | (47.80) | |
| Travel | (26.80) | (9.50) | (55.00) | | | | | (3.50) | |
| Prepare Guillemard for Trial (duplicative) | | | | (4.50) | (4.50) | | | | |
| Fee Application (excessive) | | | | | | | | (75.00) | |
| Adjustment (1% of non-court hrs. for waived claims) | (17.72) | (14.73) | (19.74) | (1.45) | (1.97) | | | | |
| Adjustment (clerical) | | | | | | | | (181.35) | |
| Total Deductions | (98.50) | (68.11) | (161.17) | (32.40) | (20.27) | (14.00) | (39.00) | (307.65) | (741.10) |
| TOTAL HOURS | 1,878.80 | 1,535.39 | 1,960.08 | 112.35 | 177.48 | 14.90 | 163.00 | 901.35 | 6,743.35 |
| In-Court | 204.90 | 130.10 | 147.40 | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | 483.40 |
| Out-of-Court | 1,673.90 | 1,405.29 | 1,812.68 | 112.35 | 176.48 | 14.90 | 163.00 | 901.35 | 6,259.95 |

| JS | JP | JSP | AGN | MGN | PSR | LawClerk | Paralegal | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | In-Court |
| 204.90 | 130.10 | 147.40 | 0.00 | 1.00 | 0.00 | 0.00 | 0.00 | Hours |
| $ 350.00 | $ 225.00 | $ 250.00 | $ 200.00 | $ 175.00 | $ 200.00 | $ 85.00 | $ – | Rate |
| $ 71,715.00 | $ 29,272.50 | $ 36,850.00 | $ – | $ 175.00 | $ – | $ – | $ – | Total In Court |
| | | | | | | | | Out-of-Court |
| 1673.90 | 1405.29 | 1812.68 | 112.35 | 176.48 | 14.90 | 163.00 | 901.35 | Hours |
| $ 330.00 | $ 215.00 | $ 235.00 | $ 175.00 | $ 155.00 | $ 185.00 | $ 75.00 | $ 50.00 | Rate |
| $ 552,385.68 | $ 302,136.49 | $ 425,980.15 | $ 19,661.69 | $ 27,354.79 | $ 2,756.50 | $ 12,225.00 | $ 45,067.50 | Total Out-of-Cour |
| $ 624,100.68 | $ 331,408.99 | $ 462,830.15 | $ 19,661.69 | $ 27,529.79 | $ 2,756.50 | $ 12,225.00 | $ 45,067.50 | $ 1,525,580.30 |

In accordance with the above-described deductions, hourly-rate changes and adjustments, the resulting amount of compensable legal fees is **$1,525,580.30.**

## E. Expenses

In their motion for Attorney fees and costs, Plaintiffs seek compensation for expenses such as: travel and lodging costs; food expenses; transportation expenses; messenger service expenses; telephone and courier (FedEx) expenses; photocopying costs; court reporter and interpreter services; and consulting services expenses. *See* Dockets No. 476, 477. The Defendants oppose these requests on several grounds as shall be discussed below. *See* Docket No. 486.

■ Under § 1988, a successful civil rights plaintiff is entitled to certain expenses which are customarily billed by Attorneys to their clients. *See* 42 U.S.C.A. § 1988. *See also Boston and Maine Corp. v. Moore*, 776 F.2d 2 (1st Cir.1985). "It is well-established in awarding fees in a civil rights case that certain out-of-pocket costs incurred by the plaintiffs' attorneys, including transportation, lodging, parking, food and telephone expenses can be reimbursed as reasonable and necessary costs and expenses." *Id.* at 11 (internal citations and quotation marks omitted). Notwithstanding, "[i]n determining what expenses should be awarded, a court must apply a test of reasonableness and necessity." *Id.* (*citing Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir.1983)). In accordance with these principles, the Court will now examine the reasonableness of the itemized expenses for which Plaintiffs seek compensation.

### 1. Travel, Lodging, Transportation, Food and Long Distance Telephone Charges

■ The Plaintiffs now seek reimbursement of $54,539.73 in travel expenses (transportation, lodging, and hotel food expenses), $1,484.57 in outside-hotel meals at 50% of the actual cost, and $734.48 in long distance telephone charges. The Defendants challenge these requests on the grounds that Defendants should not subsidize Plaintiffs' decision to hire out-of-town counsel. *See* Docket No. 486. The Court agrees.

Although the amounts requested by Plaintiffs are recoverable pursuant to 42 U.S.C. § 1988, they are subject to a reasonableness review. As discussed above, local counsel with the required degree of experience and specialization were available to Plaintiffs, and it would be unreasonable to charge Defendants for the extraordinary travel expenses incurred by Attorneys Steinfield, Pyle and Schlump–Peters, which arose from Plaintiffs' decision to hire out-of-town Attorneys. In addition, Plaintiffs have failed to argue in favor of the reasonableness of these expenses. Therefore, the Court will disallow all expenses that resulted from Plaintiffs' uncalled for retention of distant lawyers. *See Palmigiano v. Garrahy*, 707 F.2d 636 (1st Cir.1983) (allowing reimbursement of reasonable and necessary expenses incurred by out-of-state Attorneys who participated in prisoners' civil rights action, including costs for transportation, lodging, parking, food and telephone expenses, only where the out-of-state Attorneys in question specialized in prison matters and brought to the case experience and resources not easily duplicated locally); *Parker*, 310 F.Supp.2d at 400 (holding that prevailing plaintiff in § 1983 action could not recover hotel costs for Attorney and paralegal when plaintiff provided no explanation as to why it was necessary for him to hire out-of-state counsel and when use of local counsel likely would not have involved such costs); *Ramos Padro v. Commonwealth of Puerto Rico*, 100 F.Supp.2d 99, 109 (D.P.R.2000) (disallowing cost of phone calls inasmuch as plaintiffs' Attorney failed to proffer explanation as to why calls were necessary to litigation).

The Court, however, will allow the food expenses incurred by Plaintiffs' Attorneys during trial, which amounts to **$48.32** for M & G Attorneys and **$88.93** for Prince & Loeb Attorneys, for a total of **$137.25** in food expenses.

### 2. Mail, Fax and Courier Expenses

The Plaintiffs request to recover $9,494.31 in fax, postage, messenger and express mail services. The Defendants challenge this amount on the same grounds as the travel expenses: to the extent Plaintiffs seek reimbursement for documents mailed/faxed to and from Miami or Boston, they should be disallowed because these costs arise out of Plaintiffs' decision to hire out-of-state counsel. *See* Docket No. 486 at page 24. This Court incorporates herein the analysis and the conclusions reached in the foregoing section, and thus finds that the amounts spent by Plaintiffs' Attorneys for delivery services and long distance faxing are unreasonable. Therefore, this Court will not grant Plaintiffs' request for reimbursement of these items.

Notwithstanding, the Court has identified certain delivery service expenses incurred locally by the N & G Attorneys, as well as messenger service expenses incurred by the Prince & Loeb Attorneys for delivering documents to the First Circuit Court of Appeals, which the Court finds are reasonable. These items amount to **$125.00** for N & G (Docket No. 477–4) and **$75.60** for Prince & Loeb (Docket No. 476–7), for a total of **$200.60** in courier services.

### 3. Photocopying

■ Plaintiffs seek $5,074.44 in-house photocopying expenses and $4,307.71 in payments made to outside vendors (Minuteman Press and Doubleday). The Defendants object to this amount as excessive.

Upon examination of Plaintiffs' records, we partially differ from Defendants. We find the in-house photocopying costs at fifteen cents per copy ($0.15) to be reasonable. However, the Court notes that although Plaintiffs have submitted a general list of their copying expenses by outside vendors, accompanied by photocopies of receipts, they have not provided detailed explanations for these particular expenses. *See Hensley,* 461 U.S. at 433, 437, 103 S.Ct. 1933 (requiring adequate documentation to allow the court to identify the amounts claimed); *Zayas v. Puerto Rico,* 451 F.Supp.2d 310 (D.P.R.2006) (disallowing photocopying expenses to outside vendors Sir Speedy and Doubleday due to plaintiffs' failure to identify the copied documents or explain why these expenses were necessary for the case). However, having presided over trial, the Court is aware of Plaintiffs' use of exhibit blowups that the Courts finds were useful for the jury's comprehension of the issues presented. Therefore, the Court will allow fifty percent (50%) of these costs.

In conclusion, the Court will allow a total of **$7,227.01** in photocopying expenses: **$5,074.65** for in-house photocopying as requested ($91.50 to be paid out to N & G and $4,983.15 to be paid out to Prince & Loeb) and **$2,152.36** for outside-vendor photocopying expenses to be paid out to N & G.

### 4. Computerized. Legal Research

■ The Plaintiffs also seek $16,420.84 in computerized legal research which Defendants object on the grounds that it is an unreasonable amount. In support of their request, Plaintiffs submit hundreds of pages of invoices from LexisNexis. The invoices are incomprehensible, to say the least, and do not indicate to the Court the subject matters that were researched thus failing to place the Court in a position to

determine the reasonableness of their request. Due to this lack of description, the Court will make a thirty percent (30%) reduction in the research charges. *See Parker*, 310 F.Supp.2d at 401 (fifty percent reduction in research charges claimed as costs by prevailing plaintiff was warranted in § 1983 action, given plaintiff's failure to identify subject matter of any of research charges and given that most of plaintiff's claims were unsuccessful). Accordingly, the Court will tax Defendants $11,494.59 in computerized legal research.

### 5. Court Reporter, Trial Services and Court Interpreter Services

The Plaintiffs also request compensation for $2,993.75 for deposition and trial transcript services and $1,315.00 for court interpreter services. The Defendants object to these amounts, but fail to state the grounds upon which they base their objections. *See* Docket No. 486 at page 27. Despite Defendants' objections, the Court is aware that many witnesses had to be deposed during the discovery phase of this litigation and that expedited trial transcripts were necessary due to the critical nature of some of the testimony presented. *See Parker*, 310 F.Supp.2d at 401 (costs for expedited transcripts that related to trial testimony were reasonable in light of testimony's critical nature, and thus could be recovered by prevailing plaintiff in § 1983 action). Therefore, there will be no deduction for these charges, which amount to a total of $4,308.75.

### 6. Expert Fees

■ The Plaintiff also requests recovery of payments to Harvard Law School Professor Richard F. Fallon, Jr., who plaintiff Lone Star retained to provide consulting services on issues of constitutional law. Professor Fallon's charges amounted to $11,700 in consulting fees. The Defendants challenge this request on the grounds that it is not only excessive, but also unnecessary inasmuch as Plaintiffs hired Mr. Steinfield, an expensive Attorney, because of his expertise in civil rights litigation. *See* Docket No. 486 at page 27. We agree.

Although Plaintiffs' conclusively assert that the charges are extremely reasonable and that the Professor's consultation was extremely helpful, they fail to adequately set forth the particular services the consultant provided. Merely attaching the consultant's laconic invoice is not enough to place this Court in a position to determine the reasonableness of the request. Therefore, the Court will reduce the expenses claimed by $11,700, the amount billed by the consultant.

### 7. Secretarial Overtime

■ Finally, Plaintiffs seek payment for costs incurred in secretarial overtime totaling $444.00. The Defendants also object to this amount and we concur. Consequently, the Court disallows this cost as well. *See Weinberger v. Great Northern Nekoosa Corp.*, 801 F.Supp. 804 (D.Me. 1992) (disallowing incidental expenses, including secretarial overtime, in request for Attorney fees and costs); *McLaughlin by McLaughlin v. Boston School Committee*, 976 F.Supp. 53 (D.Mass.1997) (holding that, pursuant to 42 U.S.C.A. § 1988, secretarial services and work done by administrative staff are not recoverable as part of Attorney fees in civil rights action).

### III. CONCLUSION

For all the reasons set forth above, the Court therefore **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for the Attorneys' fees. Plaintiffs are awarded **$1,525,580.30** in legal fees and **$23,368.19** in costs and expenses. The Attorney fees shall be distributed as follows:

*Prince & Loeb*
Contreras $ 660,113.14

| | | |
|---|---|---:|
| Juarbe | $ | 355,445.53 |
| | $ | 1,015,558.67 |

*Nachman & Guillemard*
| | | |
|---|---|---:|
| Contreras | $ | 331,514.06 |
| Juarbe | $ | 178,507.57 |
| | $ | 510,021.63 |
| **TOTAL** | $ | 1,525,580.30 |

**IT IS SO ORDERED AMENDING NUNC PRO TUNC THE OPINION AND ORDER ENTERED ON AUGUST 25, 2008.**